## LESLIE GEORGE TAYLOR *vs.* HELEN J. TAYLOR

*Divorce—Intention to Abandon—Evidence.*

In order to constitute a ground of divorce for abandonment, the intention of the one party to abandon the other need not have been formed at the time the actual separation occurred. If after the separation took place, that party entertains the purpose to desert the other, and the separation and the intention continue for the period fixed by statute, that is an abandonment within the meaning of law, and authorizes a divorce for that matrimonial offense.

Upon a bill for divorce by a husband against his wife, the evidence examined and held to show that the defendant voluntarily left her husband's house and returned to her father; that thereafter she refused the requests of her husband to return to his home; that there was no just cause for her refusal; that either at the time of leaving her husband or soon afterwards she formed the intention not to return to him; that this desertion has continued uninterruptedly for more than three years, and is without reasonable expectation of

reconciliation, and that consequently the plaintiff is entitled to a decree of divorce.

*Decided March 31st, 1910.*

Appeal from the Circuit Court for Cecil County (HOPPER, J.).

The cause was submitted to the Court on briefs by:

*Bernard Carter,* for the appellant.

*George A. Blake,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Cecil County dismissing the plaintiff's (appellant's) bill asking for a divorce *a vinculo matrimonii* from the defendant upon the ground of abandonment of him by her.

The bill filed in this case, August 28th, 1908, alleges that the plaintiff, Leslie George Taylor, on the 25th day of June, 1902, was married to the defendant, Helen G. Taylor, at Perryville, in Cecil County, Maryland; that both, since their marriage, have resided continuously in said county, and that they lived together at Perryville from the time of their marriage until the fourth day of November, 1903, when upon said last named day the defendant abandoned her husband, and that said abandonment continued uninterruptedly from that time to the time of the filing of the bill in this case, a period of more than three years; that the abandonment is deliberate and final and the separation beyond any reasonable expectation of reconciliation. The plaintiff, in the bill, further alleges that he is advised that by reason of such long continued abandonment of him by the defendant he is entitled to a divorce *a vinculo matrimonii* from her.

The defendant answered the bill, admitting all of its allegations except the one of abandonment and the averment that the plaintiff is entitled to the divorce asked for.

In support of the allegations of his bill, the plaintiff offered the testimony of himself, his mother, Lydia A. Taylor, and Mrs. E. K. McLain, and filed with the examiner a certified copy of the record of a former case in this Court between the same parties, reported in 108 Md. 129, together with certified copies of the opinion of this Court in that case and in its decree passed in accordance therewith, which are to be taken and read as evidence in this case. No other testimony was offered, and upon the submission of the case to the lower Court, Judge Hopper dismissed the bill with costs to the defendant. It is from that order that this appeal is taken.

On July 13th, 1904, Helen G. Taylor, the defendant in this case, filed in the Circuit Court for Cecil County, a bill against her husband, the plaintiff in this case, asking for a decree requiring him to pay unto her permanent alimony upon the ground therein set forth.

The defendant answered the bill, denying the important allegations contained therein, and a large amount of testimony was taken by both the plaintiff and defendant upon the issues joined. Upon the submission of the case to the Circuit Court for Cecil County, for its determination, a decree was passed by it, requiring the defendant, Leslie George Taylor, to pay unto his wife, as alimony, the sum of one hundred and eighty dollars *per annum*. This Court, upon appeal from that decree, reversed the lower Court and passed a decree dismissing the bill of the plaintiff with costs to the defendant. *Taylor* v. *Taylor, supra.*

The only witness in this case not in the former case is Mrs. E. K. McLain, who testified that she was in the office of the plaintiff, Dr. Taylor, on November 4th, 1903, the occasion on which his wife left her home, and saw her leave the house in the afternoon of that day, and heard Dr. Taylor say to her, "Helen, I don't want you to go."

The testimony of the plaintiff and his mother was again taken, but they testified to no material facts that were not given by them in their testimony in the former case. Therefore, the testimony, is practically the same in both cases, at

least, this additional testimony added nothing to the evidence in the former case favorable to the defense in this case.

In the former case the plaintiff, Helen G. Taylor, contended that the acts and conduct of the defendant, Dr. Taylor, in his treatment of her, amounted to an abandonment of her by him. The Court in that case, speaking through JUDGE SCHMUCKER, said: "It is not averred in the bill that he, himself, left the marital domicil and refused to return to it. The abandonment is alleged to have been accomplished through deceit on his part, by inducing her to visit her parents and then refusing to permit her to return to his home. The Court then, after reviewing the evidence in the case, said: "We do not think the charge of abandonment, made by the plaintiff against the husband, is supported by the evidence." In that case the husband was charged by the wife with abandonment of her; in this case the wife is charged by the husband with abandonment of him, and the counter charges are each based upon practically the same state of facts. Upon these facts, the Court has said in the former case, the charge against the husband was not sustained; and now, upon this appeal, we are called upon to pass on the charge of abandonment made by the husband against the wife, which is the only question presented by this appeal. In the case of *Gill* v. *Gill,* 93 Md. 654, after stating the definition of abandonment or desertion, as defined in the cases of *Lynch* v. *Lynch,* 33 Md. 328, *Gregory* v. *Pierce,* 4 Metcalf, 479, and *Bennett* v. *Bennett,* 43 Conn. 313, this Court referring to what was said in those cases, speaking through JUDGE PEARCE, said, that these judicial declarations as to what constitutes abandonment or desertion, in law, agree with the definition of the leading textwriter of this country upon this subject, Mr. Bishop, who says in his work on *Marriage, Divorce and Separation,* Vol. 1, secs. 1662, 1663: "Desertion as a matrimonial offense, is the voluntary separation of one of the married parties from the other or the voluntary refusal to renew a suspended cohabitation, without justification either in the consent, or the wrongful con-

duct, of the other. Its (inherent) affirmative elements are two—the cohabitiation ended—and the offending party's intent to desert. The statute creates a third affirmative element, the lapse of a defined period of time. In all cases the criterion is the intent to abandon. 1st *Bishop,* sec. 1672; *Stewart on Marriage and Divorce, secs.* 254, 255; *Alkire* v. *Alkire,* 33 W. Va. 517.

It is disclosed by the evidence in this case, that the wife after living with her husband from the date of their marriage June 25th, 1902, to the 4th day of November, 1903, on the last named day left her husband and home in Perryville and went to the home of her father, in Cecil County, about one and one-half miles therefrom, and that she has not since returned to her husband and home, but during this interval of the time has continuously lived separately and apart from him. It is, however, contended by her that when she left to go to her father's, it was her intention to return in a few days thereafter; that, at the time, she was suffering from the result of an operation performed upon her foot, made necessary by an ingrowing nail, and that her visit there was for the purpose of resting her foot, which she could not do at her own home, on account of the household work that devolved upon her when there. She also claimed that her visit to her father's home was first suggested by her husband, but before the time came for her to leave her home, some domestic controversy arose between her and her husband, in which his mother also became involved, resulting in Dr. Taylor withdrawing his consent to her leaving her home at that time, and, as she says, he told her, "The horse is ready, but remember, if you go out of this house today, you will never come back in it," and when asked by her what he meant by this remark, he said: "I mean just what I say, if you go out of this house today you will never come back in it."

This version of her leaving is borne out by the testimony of both her husband and his mother, except they both say that he did not tell his wife that if she went to her father's she could not return. Notwithstanding this interposition on the

part of the husband the wife left and went to her father's, and has never returned to her home, and has since that time continuously resided separately and apart from him.

This Court, in the former case, speaking of the alleged justification of the wife in leaving her home and in living apart from her husband, said: "These occasional outbreaks in the harmony of the marital life of the parties to this suit, even though they be chargeable to the husband's conduct, do not, in our opinion, exhibit such cruelty or ill-treatment by him of his wife, as to justify them living apart from each other."

This separation of the wife and husband, caused by the wife leaving her home and living separately and apart from her husband, without justification, as the Court has said, establishes the existence of one of the affirmative elements of the alleged abandonment of her husband by her, that of *cohabitation ended.*

We will next consider the evidence in respect to the second element of abandonment, to wit, the *intention to desert,* and determine, if we can, whether or not this element was at the time of her leaving home, or at any time thereafter, during the separation, added to the element of *cohabitation ended.*

"Separation, and intention to abandon, must concur in order to constitute cause of divorce on ground of abandonment; but they need not *be identical in their commencement."* *Pinkard* v. *Pinkard,* 14 Tex. R. 357.

"Although to constitute desertion, there must be a simultaneous separation and an intent to desert, and desertion does not exist without the presence of both, the two need not begin together, but the desertion begins whenever to either one the other is added." *Bishop on Marriage, etc.,* Vol. 1, sec. 1696. And when such abandonment, with the two elements existing, has continued uninterruptedly for a period of time fixed or defined by the statute, the third essential element is added thereto, and the abandonment as a matrimonial offense thereby becomes complete.

We are told by the defendant that when she left her home on the fourth day of November, 1903, she intended to return thereto after paying a visit of a few days to her father's home, and this she told a neighbor upon bidding her good-bye on that occasion. It may have been, or it may not have been, her intention at the time she left home to return to it and resume her marital relations with her husband, but if so, do not her subsequent acts and conduct, as disclosed by the evidence, show that such an intention to desert her husband was formed thereafter, while she was living separately and apart from her husband?

On December 3rd, 1903, within one month from the time that the defendant left her home and while she was still at her father's the plaintiff wrote and sent to her, by special messenger, a letter which was delivered to her in person. The letter was as follows:

"My Dear Wife:

Your home is with me and I want you to come back and make it home-like. Let the past be forgotten and start over again. I see no reason why we can't live happily together and make confidants of each other. I am willing to do my part if you are yours. I feel satisfied if we can have a talk alone matters can be adjusted. You know I begged you not to leave and have been sorry ever since that you did.

Helen, come back, forgive me if I have been hasty, as I will you, and we will stand by each other and this experience perhaps may do us good and we will fight life's battles once more hand in hand.

Yours with much love,

GEORGE.

PERRYVILLE, December 3d."

Some weeks after the receipt of this letter and while it was still unanswered, the plaintiff and defendant met, by accident, in the town of Perryville and a conversation between them followed, which is fully set out in the opinion of this

Court in the former case. In this interview the defendant was asked by the plaintiff if she had received the letter written and sent by him to her, to which she replied that she had, and suggested to the plaintiff that he get in the carriage in which she was riding, and go with her to her mother's saying that she felt sure they could there adjust their differences. This he declined to do, saying that her mother had told him he should never darken her doors again, and suggested that they go to their own home in Perryville and talk their matters over there, but she refused. She then suggested that they go to her lawyer's office; this was not agreeable to the defendant. In this conversation the defendant admitted that her husband asked her to come back and live with him, and she replied by saying, "upon condition," and when asked what that condition was, she said she did not want to live with his mother, but did not say she would not. The defendant never replied to the letter sent to her by her husband, nor did she ever return to her home and resume her marital relations with her husband.

After the interview referred to above, no other overtures looking towards a reconciliation were ever made by either party, but some months thereafter the bill in the former case was filed by the defendant, asking that her husband be required to pay her alimony, which, under the decree of this Court, was refused her.

In the former case, referring to the letter sent by the husband to the defendant and their interview in Perryville hereinbefore mentioned, in both of which, that is, in the letter and in the interview, the defendant was asked to return to her home and resume her marital relations with her husband, this Court said: "This letter, in view of the transactions which preceded it and the method of its delivery, may be regarded as suspiciously fervid in tone and as protesting too much, but it contains a definite proposition for mutual forgiveness and reconciliation, and a positive request to the wife for a full restoration of conjugal relations, and it should have received a reply from her. Even according to her own

version of their parting, she left his house deliberately after being warned that if she did so she could not return, while according to his account she went against his wish and request although she had his permission to go. Even if she doubted the sincerity of his letter of December 3rd, 1903, it contained so plain a request to forget the past and start afresh their living together that it was her duty at least to test his sincerity by a favorable response to his request. She should have yielded a ready assent to his subsequent offer to go with her to his home and talk over their affairs with a view to a reconciliation.

"If the parties separated by mutual consent, and one of them afterwards, in good faith, seeks a reconciliation but the other refuses to return; or, if (the separation was) for cause, and the cause is removed, but one of them declines *to renew the cohabitation* this is desertion by the one refusing, from the *time of refusal." Bishop on Marriage, etc.,* Vol. 1, sec. 1707.

"Any refusal or neglect to cohabit as husband and wife for the statutory period will constitute desertion, unless the absent party has reasonable cause for his absence. Where the parties have separated by consent or for some cause not sufficient to constitute a cause for divorce, the party refusing to resume cohabitation is guilty of desertion." *Amer. & Eng. Enc.,* Vol. 9, 2nd edition, 768.

"Where the parties are separated without reasonable cause neither can complain of the absence of the other as desertion, unless one party has made an offer of reconciliation or sought a reunion. If the offer is refused under such circumstances, the party refusing is guilty of desertion, unless the offer is refused because the party making the offer has been guilty of cruelty or some other cause for divorce. In order to have this effect, however, the offer must be made in good faith and for the purpose of effecting a reconciliation." *Amer. & Eng. Enc.,* 2nd edition, Vol. 9, 773.

We do not feel called upon in this case to determine the *bona fides* of the offers of reconciliation made by the plain-

tiff to the defendant in his letter of December 3rd, 1903, and in the interview in Perryville some weeks thereafter, as we regard what was said by this Court in the former case in stating the legal effect of such offers, making it incumbent upon the defendant to respond thereto, as determining this question.

In our opinion, the intention on the part of the wife to desert the husband has been added to the element of cohabitation ended. That if such intention did not exist at the time that she left her home and separated from her husband, that it thereafter had its origin and existed at and after the time of her refusal to respond to the offers of reconciliation embraced in the letter to her of December 3rd, and the interview with her some weeks thereafter, not later than Christmas of 1903, as by the evidence it is disclosed that her visit to Perryville, on that occasion, was to carry her sister who was then practicing for the Christmas music, and therefore could not have been later than Christmas of 1903. And as this bill was not filed until August 28th, 1908, this separation. embracing these two elements of abandonment, existed uninterruptedly for the full period fixed and defined by the statute, making the abandonment of him by her, as a matrimonial offense, complete.

From what we have said, it follows that the learned Court below erred in dismissing the bill of the plaintiff.

The decree of the Circuit Court is reversed with costs to the appellant above and below, and the cause remanded that a decree *a vinculo matrimonii* may be passed in conformity with this opinion.

*Decree reversed and cause remanded.*

PEARCE and BURKE, JJ., dissent.