# SARAH E. FLEEGLE

*vs.*

# PETER FLEEGLE.

*Divorce—Abandonment—Refusal of Intercourse.*

Abandonment, to constitute ground for a final divorce, must be the deliberate act of the party complained of, done with the intent that the marriage relations should no longer exist.  p. 632

A refusal by the wife to have sexual intercourse with the husband constitutes abandonment and desertion which, if continued for the statutory period of three years, entitles him to a divorce *a vinculo*.  pp. 633-636

*Decided June 17th, 1920.*

Appeal from the Circuit Court for Allegany County, In Equity (HENDERSON, J.).

The cause was argued before BRISCOE, PATTISON, URNER, STOCKBRIDGE, ADKINS and OFFUTT, JJ.

*F. Brooke Whiting,* with whom were *Whiting & Eppler* on the brief, for the appellant.

*Walter C. Capper,* for the appellee, submitted the cause on brief.

BRISCOE, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Allegany County, overruling a demurrer to an amended bill of complaint filed by the plaintiff against the defendant, for a decree for a divorce *a vinculo matrimonii* from the defendant.

The bill avers that the plaintiff married the defendant, in the City of Cumberland, Maryland, on the 16th day of

March, 1894, and that he had by the marriage one child, Eleanor Fleegle, who was twenty-one years of age in August, 1919.

The bill by its second paragraph alleges:

"That the plaintiff and the defendant resided together in Allegany County, Maryland, as man and wife until May 16, 1915, and that for many years prior thereto the conduct of the defendant toward the plaintiff had been cruel and vicious, and without just cause the defendant, after the birth of the daughter, refused to bear any more children, and refused, failed and neglected a great deal of the time until the said 16th day of May, 1915, to permit him to have sexual intercourse with her, and that on or about the said 16th day of May, 1915, the defendant refused any longer to occupy the same room with him, but arranged a room of her own in another part of their home, and thereafter without just cause or any cause whatsoever the defendant refused continuously to have any sexual intercourse with him, and since that time has refused constantly to live with him as man and wife, and her conduct during all of said time toward him has been cold and cruel, and has displayed no affection whatever during said time for him, and has been quarrelsome and unnatural in her conduct toward him; and he now alleges that the said defendant by such refusal as aforesaid to have sexual intercourse with him, and by all of the said treatment of him by the defendant, compelled him to leave his home, and he has not lived with the defendant since that time; and he now alleges that by such refusal of the defendant to have sexual intercourse with him, and all of the aforesaid cruel and inhuman treatment of him by the defendant on the said 16th day of May, 1915, the defendant, Sarah E. Fleegle, without just cause or reason, deserted and abandoned him, and that such abandonment was deliberate and final and has continued uninterruptedly for more than three years last past, and their separation is without any reasonable hope of reconciliation."

The bill then prays that a decree may be passed divorcing the plaintiff *a vinculo matrimonii* from the defendant and for general relief.

The defendant demurred to the amended bill and for cause of demurrer alleged: First, that the plaintiff has not stated in his amended bill such a case as entitles him to any relief in equity against the defendant; second, the defendant says that the refusal to permit the usual sexual relations between husband and wife, was not an act of desertion, as contemplated by the laws of the State of Maryland.

The facts, as alleged by the bill, are admitted by the demurrer to be true, and the single question in the case is whether these facts constitute a ground for a divorce for desertion and abandonment, under the laws of this State.

The jurisdiction of courts of equity, in this State, to grant divorces, is conferred by Sections 36 and 37 of Article 16, Vol. 1 of the Code, and the courts may decree a divorce *a vinculo matrimonii* for certain causes set out in Section 37 thereof. The fourth cause and ground is stated to be when the court shall be satisfied by competent testimony that the party complained against has abandoned the party complaining and that such abandonment has continued uninterruptedly for at least three years, and is deliberate and final, and the separation of the parties beyond any reasonable expectation of reconciliation.

This section of the Code has been carefully considered by this Court, in a long line of well considered cases, and the rule has been stated and reaffirmed to the effect that abandonment, to constitute ground for a final divorce, must be the deliberate act of the party complained of, done with the intent that the marriage relations should no longer exist. *Lynch* v. *Lynch,* 33 Md. 328; *Gill* v. *Gill,* 93 Md. 654; *Matthews* v. *Matthews,* 112 Md. 584; *Heinmuller* v. *Heinmuller,* 133 Md. 494.

In *Gill* v. *Gill,* 93 Md. 654, *supra,* this Court said: "Thus, in *Gregory* v. *Pierce,* 4 Metcalf, 479, CHIEF JUSTICE SHAW

says: 'It must be a voluntary separation from, and abandonment of the wife, embracing both the fact and intent of the husband to renounce *de facto,* and as far as he can do so, the marital relation.' And in *Bennett* v. *Bennett,* 43 Conn. 313: 'Desertion, in the marriage relation, consists in the breaking off of cohabitation, with a determination not to renew it.' These judicial declarations as to what constitutes abandonment or desertion in law, agree with the definition of the leading text writer of this country upon this subject, Mr. Bishop, who says in his work on *Marriage, Divorce and Separation,* Vol. 1, Secs. 1662 and 1663: 'Desertion as a matrimonial offense is the voluntary separation of one of the married parties from the other, or the voluntary refusal to renew a suspended cohabitation, without justification either in the consent or the wrongful conduct of the latter. Its (inherent) affirmative elements are two—the cohabitation ended—and the offending party's intent to desert. The statute creates a third affirmative element, the lapse of a defined period of time. In all cases the criterion is the intent to abandon.' 1 *Bishop,* Sec. 1672; *Stewart on Marriage and Divorce,* Secs. 254 and 255."

In *Am. & Eng. Ency. of Law,* Vol. 9, p. 764 (2nd Ed.), it is said: "Desertion is the wilful termination of the marriage relation by one of the married parties without lawful or reasonable cause, or a refusal without reasonable cause to renew the marriage relation after parties have been separated.

The Court below held that the facts alleged in the plaintiff's bill in the case at bar were sufficient to make out a case of desertion and abandonment, and overruled the defendant's demurrer to the bill.

We concur in the conclusion reached by the Court below and agree that the facts alleged in the plaintiff's bill constitute matrimonial desertion and abandonment of the husband by the wife, under the principles stated herein, and under the later decisions announced by the courts in other jurisdictions.

The earlier cases upon the question raised by the demurrer are reviewed in a note to *Frits* v. *Frits,* 14 L. R. A. 685, and

the later cases in a note to *Wills* v. *Wills* in L. R. A. 1915 B 770.

While there is a great conflict and diversity of opinion in the decisions of the courts in other jurisdictions it will be seen that many of them rest upon the language of certain statutes and are not controlling on this appeal.

Mr. Bishop, in his work on *Marriage, Divorce and Separation,* Vol. 1, Section 1676, says: "Nothing injurious to the health can be required of either party in marriage. But if from no consideration of health, and from no other good reason, either the husband or the wife permanently, totally and irrevocably puts an end to what is lawful in marriage and unlawful in every other relation—to what distinguishes marriage from every other relation—this by the better opinion constitutes matrimonial desertion, though the deserting party consents still to live in the same house with the other in the capacity of servant, of master, of brother, of sister, of parent, of child, or of friend, either for pay or as a gratuity. Yet from this doctrine there is considerable dissent; some deeming that there is a matrimonial cohabitation which substantially fulfils the ends of marriage, while the parties live chastely as to each other, in different rooms or beds, under the same general roof."

Mr. Nelson, in his treatise on *Divorce and Separation,* Vol. 1, Secs. 54, 70 and 71, deals with the question at some length, and in Section 71, under the head of "Refusal of sexual intercourse," says, in part: "Where there is no peculiar form of statute indicating a contrary definition, the true doctrine is believed to be that the statutory term "desertion," as applied to husband and wife, means a cessation of the marital relation. And this doctrine is in accord with the general principles of the divorce law. We have seen that there may be a desertion although the parties live under the same roof. Desertion implies something more than merely ceasing to cohabit or live together; for, as applied to husband and wife, it means the ceasing to live together *as husband and wife.*"

\* \* \* The policy and reason of the ecclessiastical law is clear on this point. Marriages were encouraged for reasons of public policy and morality. If one party was impotent, that is, incapable of sexual intercourse, the marriage was held voidable, for the other party was not to be held in an unnatural relation, repugnant to sex, injurious to health and promotive of adultery. In our age and country marriage is encouraged for the propagation of the race and the nurture and education of children in a home as well as the prevention of licentiousness; and the state has no active interest in preserving a marriage where these ends and purposes are defeated. If the impotence of a party defeats the purpose of marriage, it must be conceded that a wilful, continued and unjustifiable refusal of sexual intercourse will do so. To refuse divorce for this cause will, in most cases, encourage the wrongdoer and drive the complainant to desertion, adultery or cruelty." It must follow that the refusal of the wife to perform her duty in this respect constitutes a desertion within the meaning of the statute, and within the reason and policy of the law. "Indeed," says Mr. Bishop, "there is but one thing special to marriage, and is lawful in no other relation. All else pertaining thereto a man or woman may mutually contract for and do without taking the first step toward marriage. The unavoidable conclusion from which reasoning is, that the married party who permanently and irrevocably withdraws from all that is peculiar to marriage, whatever incidentals he may adhere to, commits matrimonial desertion."

The views and reasoning of Mr. Bishop and Nelson, as expressed in their works on *Marriage and Divorce* upon this subject, are supported by a number of carefully considered cases, and decisions of the courts. *Raymond* v. *Raymond* (N. J. Eq.), 79 Atlantic, 430; *Rector* v. *Rector,* 78 N. J. Eq. 386; *Whitfield* v. *Whitfield,* 89 Ga. 471; *Graves* v. *Graves,* 88 Miss. 677; *Evans* v. *Evans,* 93 Ky. 510; *Rie* v. *Rie,* 34 Ark. 37; 12 *Am. & Eng. Cases,* 548.

It seems to us, without stopping to further review the cases cited and the reasoning upon which they are based, that the plaintiff will be entitled to the relief sought by the bill, if its allegations can be sustained by the proper proof. *Gill* v. *Gill,* 93 Md. 654; *Muller v. Muller,* 125 Md. 76; *Bishop on Marriage & Divorce,* Vol. 1, sec. 1696; *Polley* v. *Polley,* 128 Md. 60.

For the reason stated and upon the authorities cited, we think the Circuit Court of Allegany County was entirely right in overruling the demurrer, and this order will be affirmed.

*Order affirmed, costs to be paid by the appellee.*