# CAROLINE KLEIN *vs.* GEORGE P. KLEIN.

*Divorce—Abandonment—Evidence.*

Abandonment or desertion, as a marital offense, consists in the voluntary separation of one of the parties from the other, or the refusal to renew suspended cohabitation, without justification either in the consent or the wrongful conduct of the other party.                                                          p. 29

Abandonment or desertion must be the deliberate act of the party complained of, done with the intent that the marriage relation shall no longer exist.                                p. 29

Separation and intention to abandon must concur, and desertion does not exist without the presence of both. The two need not begin at the same time, but desertion begins whenever to either one the other is added.                              p. 29

A divorce for abandonment and desertion may be granted without regard to duration.                                    p. 29

Refusal by the wife without just cause to have sexual intercourse with the husband constitutes matrimonial desertion. p. 33

When the testimony is taken in open court, and an opportunity is thus afforded the chancellor to observe the character and demeanor of the witnesses, their manner of testifying, their prejudice or absence of prejudice, as disclosed by their apparent attitude towards the parties, thus materially assisting him in passing upon the credibility of their testimony, the Court of Appeals is reluctant to disturb a decision based upon the findings of fact, unless the reason therefor is strong and compelling.                                                        p. 33

*Decided July 1st, 1924.*

Appeal from the Circuit Court for Baltimore County, In Equity (PRESTON, J.).

Bill by George P. Klein against Caroline Klein for divorce. From a decree for plaintiff, defendant appeals. Affirmed.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, and DIGGES, JJ.

*Thomas F. Cadwalader,* for the appellant.

*R. E. Kanode* and *Louis J. Roth,* submitting on brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Baltimore County, dated July 13th, 1923, by which the appellee, George P. Klein, was granted a divorce *a mensa et thoro* from the appellant, his wife, Caroline Klein, and dismissing the cross-bill of the appellant.

The bill of complaint was filed on January 16th, 1923, and prays for a divorce *a mensa et thoro,* on the ground of abandonment and desertion.

The appellant filed her answer February 7th, 1923, denying the material allegations of the bill of complaint against her, and on the same day filed her cross-bill, in which it is alleged that the appellee, without just cause or reason, abandoned and deserted her, and before and after said abandonment the appellee had treated her with gross cruelty, indifference and disrespect. The prayer of the cross-bill is for permanent alimony, as well as alimony *pendente lite* and counsel fees.

The appellee filed his answer to the cross-bill, in which he denied the material facts therein alleged, and reiterated the matters set out in the original bill of complaint.

The two cases were heard and considered together and resulted in a decree as above stated.

The law in this case is simple and well settled by decisions of this Court and elsewhere.

The Code of Public General Laws, art. 16, sec. 38, provides: "Divorces *a mensa et thoro* may be decreed for the following causes, to wit: First, cruelty of treatment; secondly, excessively vicious conduct; thirdly, abandonment and desertion."

Abandonment or desertion, as a marital offense, consists in the voluntary separation of one of the married parties from the other, or the refusal to renew suspended cohabitation, without justification either in the consent or the wrongful conduct of the other party. *Bishop on Marriage, Divorce and Separation,* vol. 1, secs. 1662-3; *Gill* v. *Gill,* 93 Md. 654; *Taylor* v. *Taylor,* 112 Md. 666; *Buckner* v. *Buckner,* 118 Md. 101.

It must be the deliberate act of the party complained of, done with the intent that the marriage relation shall no longer exist. *Young* v. *Young,* 136 Md. 84; *Fleegle* v. *Fleegle,* 136 Md. 630; *Ruckle* v. *Ruckle,* 141 Md. 213.

Separation and intention to abandon must concur, and desertion does not exist without the presence of both. The two need not begin at the same time, but desertion begins whenever to either one the other is added. *Taylor* v. *Taylor, supra; Muller* v. *Muller,* 125 Md. 76; *Meginniss* v. *Meginniss,* 144 Md. 39.

A divorce for abandonment and desertion may be granted without regard to duration. *Brown* v. *Brown,* 2 Md. Ch. 316; *Harding* v. *Harding,* 22 Md. 337; *Young* v. *Young, supra.*

The law governing this case being thus established, it is only necessary to examine the evidence to ascertain whether or not the facts upon which the decree must rest have been proven.

The testimony covers more than two hundred and fifty pages of the record; much of it is immaterial and irrelevant, and the language and acts of the parties towards each other, as testified to by them and other witnesses, is often profane, obscene and vulgar. It would serve no useful purpose to recite herein this disgusting language and these revolting acts.

The parties are each about fifty-six years of age, and had been chums as young people, both at that time living in Baltimore City. The marriage took place in Philadelphia on November 22nd, 1921. Both had been previously married, the first wife of the appellee having died not a great while before the marriage in this case. He had, at the time of this marriage, a single daughter and a single son living with him at No. 4203 Connecticut Avenue, Baltimore, and two other children who were then married and not living with their father. He owned the Connecticut Avenue property, which was a three-story apartment, his family occupying the lower or first apartment, and the other being rented to tenants.

The appellant's first husband was a Mr. Smith, with whom she lived for twenty-eight years and until his death, and by whom she had a large family, there being six children, all grown at the date of her marriage to the appellee. Among these children was a son, Martin Smith, a *non compos mentis,* and who was an inmate of a hospital in Philadelphia at the time of his mother's marriage to the appellee.

About five years after the death of her first husband the appellant married a Mr. Wood of Philadelphia in September, 1920, and from whom in July, 1921, she obtained a divorce on the ground of adultery. Before her marriage to the appellee she was acquainted with members of his family and knew the conditions surrounding the place that would be her future home, and that the single daughter and son would constitute members of the family who would occupy that home.

On the evening of the day of the marriage the appellee and appellant went directly from Philadelphia to Baltimore and took up their residence in the Connecticut Avenue apartment. The appellant was welcomed by the children of the appellee, and apparently the married life of the parties was a happy and contented one, until the advent into the home of Martin Smith, the mentally afflicted son of the appellant. This was on December 26th, 1921, and almost coincident with his coming, certainly within a very short time thereafter, friction,

disagreement and discord between the husband and wife began, the husband frequently requesting the appellant to return her son to the hospital, and she apparently feeling that her son should be allowed to remain with her in the home of her husband, although it was clearly understood that his coming was to be only for a visit.

The rupture of the marital peace and happiness thus begun rapidily became more pronounced until, in the latter part of March, 1922, the husband peremptorily told his wife that she must remove her son from the home. The appellant then left the Connecticut Avenue apartment, taking her son Martin with her, and remained away for a period of from three to ten days (the testimony being contradictory on this point). When she returned it was without her son, and conditions in the home seemed much improved. This improvement, however, was of short duration, the attitude of the appellant toward her husband becoming very bitter, her language very abusive, and the disagreements and clashes between them becoming more frequent until, on or about July 24th, 1922, the appellant ceased to cohabit with her husband, occupied rooms separate from his, putting locks on the doors of the room so occupied, and nailing the doors to the floor, thereby preventing the appellee from having access to her rooms.

Some time prior to this occurrence the single daughter of the appellee had been forced to leave the home of her father and live with a married sister for the reason, as stated by her, "because my stepmother never let us have any peace after her son left."

With the above described conditions continuing, the appellant, on the 8th day of September, 1922, filed her bill of complaint against the appellee in Circuit Court No. 2 of Baltimore City, praying for permanent alimony because of the alleged refusal of the husband to provide for her. This bill was duly answered by the appellee, in which answer the allegations of his wife's bill of complaint were specifically denied.

On October 17th, 1922, during the taking of testimony in that case, the chancellor urged that the parties try and forget their past differences and again live together as husband and wife. The further taking of testimony was then postponed for such time as might be sufficient to demonstrate the success or failure of that plan. The suggested plan brought about no beneficial results, as the appellant, after leaving the court, did not return to the home of her husband until a very late hour, after he had retired for the night, and did not go to his room, but occupied the same rooms, with the doors fastened, as she had done previous to the agreement made before Judge Stein.

On the night of October 19th, 1922, when the appellee returned home after a meeting of the building association of which he was an officer, he found some of the neighbors in his wife's room, and her complaining of being sick. Later the doctor, who had been called by telephone, arrived, and directed that Mrs. Klein be taken to the home of her friend, a Mrs. Muller. The appellee desired to get a taxicab for that purpose, but this proposal was indignantly rejected by his wife, and she finally went to Mrs. Muller's in the car of Dr. McCleary, absolutely refusing to allow her husband to accompany her, and using abusive language with intent to embarrass and humiliate him in the presence of strangers. He directed the doctor to do everything possible for her comfort, and that he would pay for the attention. The appellee went to the home of Mrs. Muller on the following morning and saw his wife, and continued to go, making inquiries in respect to her health and comfort, and leaving money for that purpose, until she was again up and about.

It must be noted that these happenings occurred while the appellee was paying alimony to the appellant under the temporary order of the Circuit Court No. 2 of Baltimore City.

The testimony further discloses that the appellant removed from the home of her husband some time after July 24th, 1922, all of her furniture which she had brought there from Philadelphia, and a number of articles belonging to the ap-

pellee, placing them in storage in the name of her son, Martin Smith; that the appellee, during the year 1922, built a home at Arbutus, Maryland, it being the understanding between himself and wife that upon its completion they would remove to that home and rent the Connecticut Avenue apartment; that the appellee remained at the apartment for more than four weeks after the recovery of his wife from the sickness, in consequence of which she had gone to the home of Mrs. Muller; he then removed to the new house at Arbutus. That the appellant made no effort or attempt to return and live under the same roof with her husband after October 19th, 1922, and has refused to have sexual intercourse with him since July 24th, 1922; that on the 18th day of January, 1923, the proceedings in the Circuit Court No. 2 of Baltimore City were dismissed by the court without prejudice.

Refusal by the wife without just cause to have sexual intercourse with the husband constitutes matrimonial desertion. *Fleegle* v. *Fleegle, supra; Martin* v. *Martin,* 141 Md. 182.

The testimony in this case was taken in open court, and an opportunity was thus afforded the chancellor to observe the character and demeanor of the witnesses, their manner of testifying, their prejudice or absence of prejudice, as disclosed by their apparent attitude toward the parties, thus materially assisting him in passing upon the credibility of their testimony.

Under such circumstances this Court is reluctant to disturb a decision based upon findings of fact, unless the reason therefor is strong and compelling. This rule has been announced in a number of previous decisions.

After a careful examination of all the evidence we find no sufficient reason for disagreeing with the conclusions reached by the lower court, and its decree will therefore be affirmed.

*Decree affirmed, costs to be paid by the appellee.*