## HELEN M. SHEEHAN *v.* THOMAS B. SHEEHAN.
[No. 1, January Term, 1929.]

*Decided March 19th, 1929.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Henry H. Dinneen,* submitting on brief, for the appellant.

*J. Richard Standiford,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

The bill of complaint in this case was filed in the Circuit Court of Baltimore City by the wife, appellant here, praying a divorce *a mensa et thoro,* permanent alimony, and counsel fees. The answer denied all of the material allegations of the bill. Testimony was taken in open court. Sub-

sequently the chancellor passed a decree dismissing the bill. The appeal is from that decree.

The parties were married on May 27th, 1907, in St. Louis, Missouri. At the time of the hearing the appellant was residing in New York City and the appellee in Baltimore; his employment being that of floor manager for a department store at a salary of thirty-four dollars a week. According to the wife's testimony they were living together in New York City in February, 1920, at which time the appellee obtained a position with a "silk firm" at Utica, New York, as assistant buyer, and in the course of his employment was to make periodical trips to New York City, where she remained; that he was in Utica for two or three months, and then, without returning to see her, went to Baltimore, where he has since resided; that more than three years elapsed after he left for Utica before she again saw him, which was in January, 1925; that he came to New York on that occasion to obtain an insurance policy on his life, with her as beneficiary, in the amount of $48,000, she to use the policy as security for a loan of $10,000 to be made by one of her friends. That with the money so obtained her husband was to go in the jobbing business, he to do the buying and selling, while she would attend to the finances. That the loan was never consummated, because he did not come for the money. That the insurance is still in force, she having kept the premiums paid up. That except for one period of two months there has been correspondence between them, and, up to the time she put her case in the hands of counsel, "He has been writing to me once a week and sometimes twice a week." That he never asked her to come to Baltimore; "I told him I was coming and he said to try it." That during the time they have been living apart she had received from him about $25, while she had sent him, of her earnings, between $200 and $225. "Q. Will you tell the court why Mr. Sheehan left you, if you know? A. I don't know. He tells me he has not left me." "Q. Has Mr. Sheehan at any time ever told you why he left? A. No, he has never told me since he left, but at least twice before he left he said to me, 'Now, my health

is not the best and I warn you you better learn some way to support yourself.' Well, I had never heard of anything like that before, and I did not pay any attention to it, so that when he went away I did not think he meant it, and his letters did not confirm that he meant it." When asked what her husband would say in his letters to her, she answered, "One time he says, 'For God's sake don't stop writing to me for you are the only one I get letters from.' Then I wrote and told him that people had received the impression that he had deserted me, and he wrote back and he said, 'Contradict any such report that I have deserted you.' He said, 'There is nothing to it.' And I had not seen him for a couple of years at the time." On January 7th, 1926, the appellant wrote the following letter to the appellee:

"Dear Ben:

"In reply to yours would say I received one pair of 6¼ kid gloves between Xmas and New Years. As I wore 6½ when I married you and considering what 1 have passed thru since you can see that I cannot use the article you sent to me as a gift, but I thank you just the same. I have a friend here, to whom I am obligated, who wears that size and I can give them to her unless you wish them back. In order to protect myself from 'Foreign Entanglements' I am planning on asking for a divorce from you in Feb. or late Jan. Under such conditions gifts and cards between us are ridiculous."

The record further discloses that there are no children born to the marriage; that she had not asked her husband to provide a home for her in Baltimore or that he return to New York, except the one occasion heretofore referred to; that the wife has been earning as much or more than the wages of the husband.

The husband's testimony is that, from the date of the marriage, he had held numerous positions in widely scattered cities, for varying periods, the one of the greatest length being with the J. M. Adams Company, of Buffalo, New York, where he was employed for nine or ten years; that for some

time before and after coming to Baltimore his wife had been endeavoring to prevent him from keeping employment, by sending to his employers anonymous letters assailing his character; that some such letters were enclosed in letters from his wife to him, purporting to have been received by her from Baltimore; that he made complaint to the Baltimore postmaster, and notified his wife of having done so, after which the anonymous letters ceased coming. This is denied by the wife. He testified further that he had not asked his wife to come to Baltimore and make a home with him; that he had "given Mrs. Sheehan more than she wanted. She advised me she wanted nothing from me and if I took her word for it I would have kept to that. As far as me supporting Mrs. Sheehan, it was just like me upholding an enemy because Mrs. Sheehan in the last three or four years has deprived me of any method of living"; and that he had sent her small sums of money from time to time. Again, when questioned as to whether his wife had suggested that she come to live with him in Baltimore, he said, "No, Mrs. Sheehan has declared herself to the contrary, that she would not live with me under any circumstances. She advised me she did not want any mail or correspondence with me. She also told me in her mail she did not want any money and did not want any of my funds, but it seems she contradicted that by requesting small amounts both when I went to New York and from here." The only other witness was a friend of the appellant with whom she lived, who said the appellee had not been to New York for two years previous to the trial, but knew nothing of the domestic troubles.

We have detailed the testimony at some length because it presents an unusual situation. The decree is sought on the single ground of abandonment, and the question is, Does the evidence entitle the appellant to a divorce *a mensa et thoro,* as prayed?

Abandonment or desertion, as a marital offense, consists of the voluntary separation of one of the parties from the other, or the refusal to renew suspended cohabitation without justification either in the consent or the wrongful conduct of

the other. It must be the deliberate act of the party complained of, with the intent that the marriage relation no longer exist. To justify a divorce for abandonment, the intention of the one party to abandon the other need not have been formed at the time the actual separation occurred. If, after the separation took place, one of the parties entertains the purpose to desert the other, and the separation and intention continue for the period fixed by the statute, it constitutes abandonment as a matter of law and authorizes a divorce on that ground. *Taylor v. Taylor,* 112 Md. 666; *Muller v. Muller,* 125 Md. 72; *Hubbard v. Hubbard,* 127 Md. 617; *Etheridge v. Etheridge,* 120 Md. 11; *Heinmuller v. Heinmuller,* 133 Md. 494; *Fleegle v. Fleegle,* 136 Md. 630; *Klein v. Klein,* 146 Md. 27. In the last mentioned case this court said: "It must be the deliberate act of the party complained of, done with the intent that the marriage relation shall no longer exist. *Young v. Young,* 136 Md. 84; *Fleegle v. Fleegle,* 136 Md. 630; *Ruckle v. Ruckle,* 141 Md. 213; Separation and intention to abandon must concur, and desertion does not exist without the presence of both. The two need not begin at the same time, but desertion begins whenever to either one the other is added. *Taylor v. Taylor, supra; Muller v. Muller,* 125 Md. 76; *Meginniss v. Meginniss,* 144 Md. 39. A divorce for abandonment and desertion may be granted without regard to duration. *Brown v. Brown,* 2 Md. Ch. 316; *Harding v. Harding,* 22 Md. 337; *Young v. Young, supra.*"

Applying the settled law to the facts in this case, the chancellor reached the conclusion that the evidence did not measure up to legal abandonment; and we are in accord with that conclusion. There is nothing in the record from which it can be said that the failure of the spouses to live together was with any intent on the part of the husband that the marital relation should no longer exist. On the contrary, it clearly shows that, when the husband left in 1921, it was with the knowledge, acquiescence, and consent of the wife; that since then the parties have maintained regular and continuous correspondence with each other, which is conclusive that in a

legal sense the husband had no intention of deserting his wife. It is not shown that the wife ever made a request that the husband provide a home for her in Baltimore, or that she demanded that he return to her in New York. In addition, the evidence is that since the husband has resided in Baltimore he returned to New York and insured his life, for the benefit of the wife, to the extent of $48,000. Again, the letter of the wife, dated January 7th, 1926, above quoted, acknowledges having received a Christmas present from the husband, and tells him that, in view of the fact that she is planning for a divorce from him in January or February of that year, she should not be receiving cards and gifts from him.

The testimony of the wife is not corroborated except to the extent that the husband had not been at her friend's house, where she boarded, within two years prior to the institution of the suit. This is the testimony of her friend, and is not contradicted by the husband. There is no corroboration whatever of the remaining testimony of the complainant, which is a requirement of the statute in respect to proceedings instituted for obtaining a divorce. Code, art. 35, sec. 4. But, without regard to the question of corroboration, and giving the complainant's testimony full weight, in our opinion it does not present a situation entitling her to the relief prayed. In order to procure a divorce under the allegations of the bill filed in this case, it was incumbent upon the complainant to prove that the defendant deliberately left her with intent to bring the marriage relation to an end, and that there is no reasonable hope of reconciliation. *Tomkey v. Tomkey,* 130 Md. 293. We are convinced that the complainant here consented to the defendant leaving her, and there is no sufficient evidence to indicate that the living apart has not continued to be with her consent. Neither is there evidence that the defendant ever intended to bring the marriage relation to an end. We find no error in the decree of the chancellor.

*Decree affirmed, with costs to the appellee.*