# PAULINE J. DUNNIGAN *v.* JOSEPH LAWRENCE DUNNIGAN

[No. 15, April Term, 1943.]

Decided April 29, 1943.

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, GRASON, MELVIN, and ADAMS, JJ.

M. *William Adelson*, with whom was *Theodore R. Mc-Keldin* on the brief, for the appellant.

*Joseph H. A. Rogan*, with whom was *Alfred J. O'Ferrall, Jr.*, on the brief, for the appellee.

MELVIN, J., delivered the opinion of the Court.

This is a suit by the wife (appellant) against the husband (appellee) for a divorce *a viculo matrimonii* on the ground of abandonment. These parties were married in June, 1930, and separated, finally, in February, 1938. The husband then left his wife and two infant children, giving as his reason for so doing his financial inability to pay board at the home of his wife's parents where they were all living.

The record shows that within the month following the separation, the wife entered suit in Baltimore County against the husband for non-support, and that although he secured counsel and filed an answer no further proceedings were had. This was due, it is alleged to his failure to appear at the time set for a hearing before the court, and to his unknown whereabouts subsequently. It is also alleged, and not denied, that the total amount of $30 is all that the husband has contributed for the support and maintenance of his wife and children since

he left them in February, 1938—the last payment of $5 going to constitute that sum having been made in April, 1938. This undisputed fact in the record is to be emphasized, as it gives the clearest light of all on the controlling question of the husband's intention in leaving his family and remaining apart from them ever since.

On July 26, 1941, the wife instituted divorce proceedings against the husband in Baltimore City, alleging abandonment for over three years, and asking for a decree *a vinculo matrimonii* and for the custody of the infant children. On the allegation that the defendant was a non-resident, an order of publication was issued and executed, following which in due course the proceedings were submitted to Judge Eli Frank, who, under date of October 16, 1941, signed a decree granting the divorce and custody, as prayed.

At that time the wife and children were still living with her parents, and the wife had gotten employment to earn some money toward their support, none having been forthcoming from the husband. On December 4, 1941, Circuit Court No. 2 of Baltimore City passed a decree on the petition of the wife and mother (the appellant) for the adoption of the said infant children by the wife's parents, Clark E. Skegg and Naomi Skegg, his wife.

The next step in the proceedings was taken by the husband, who then showed up in the domestic picture for the first time in over three years by filing a petition, under date of March 21, 1942, to rescind the decree of divorce and also the adoption decree. This was on the ground, principally, that the husband was not a non-resident at the time of his wife's preceding actions in court. At the hearing on this petition before Judge Ulman on April 29, 1942, counsel for the wife consented to the passage of an order striking out the decrees in question.

The decree for divorce passed on October 16, 1941, having thereupon been stricken out, and jurisdiction over

the cause and the parties thereto having been retained, subject to the further order of court, the defendant, Joseph Lawrence Dunnigan, under date of June 5, 1942, filed his answer to the original bill for divorce. Testimony was thereafter taken in open court before the chancellor (Judge O'Dunne), at the conclusion of which the decree was passed from which this appeal has resulted.

The principles of law applicable to a case of this kind have been stated so many times by this court in the multitude of divorces that have come before it that only a brief citation of authorities is necessary. Typical of the Maryland cases announcing these principles, where abandonment is alleged as the ground for divorce, are: *Klein v. Klein*, 146 Md. 27, 125 A. 728; *Taylor v. Taylor*, 112 Md. 666, 77 A. 133; *Buckner v. Buckner*, 118 Md. 101, 84 A. 156, *Ann. Cas.* 1914B, 628; *Lynch v. Lynch*, 33 Md. 328; *Boyd v. Boyd*, 177 Md. 687, 11 A. 2d 461; *Crumlick v. Crumlick*, 164 Md. 381, 165 A. 189.

According to these cases and the others in line with them, it is well settled that for a leaving of one spouse by the other to constitute "abandonment," within the meaning of the statute, there must be two affirmative elements: first, the ending of the cohabitation, and, second, the offending party's intention to desert. Also, that while the separation and intention to abandon must concur, the two elements need not begin together, and desertion begins whenever to either one the other is added. *Taylor v. Taylor, supra; Klein v. Klein, supra; Boyd v. Boyd, supra.*

As stated in the Boyd case, *supra*, "the length of time during which the separation has existed is to be considered in determining whether an alleged abandonment is real, or exists merely in the imagination or desire of the complaining party."

On the issue of abandonment in the case at bar, the undisputed facts are that the husband did actually leave his wife and children in February, 1938; that he has remained apart from them ever since; that until his in-

tervention in these divorce proceedings in 1942, he not only made no effort or offer to provide them with a home but went his own way; that subsequent to his leaving, down to the present time, his total contributions toward the support of his wife and children have been exactly $30 and that since April, 1938, he has contributed nothing whatever. It also appears, according to his own testimony, that for at least three years prior to the final hearing in the case he was working for an air conditioning contractor in Baltimore for a salary which, at the time he was testifying, he stated to be $60 a week.

These admitted facts are sufficient, in themselves, to clearly establish the husband's intention in the course pursued by him. There is not only in this case the ending of the cohabitation, at the instance of the husband, but a showing of facts in connection therewith which makes his abandonment real, and not imaginary on the part of the wife. *Boyd v. Boyd, supra.* Supporting authorities are: *Gill v. Gill,* 93 Md. 652, 655, 49 A. 557; *Strzegowski v. Strzegowski,* 175 Md. 53, 59, 199 A. 809; *Bruner v. Bruner,* 70 Md. 105, 16 A. 385.

In view of these facts, which constitute abandonment within the purview of the statute, the husband's offer of reconciliation made at the final hearing in this case comes too late, and is also lacking in the elements necessary to show good faith. Moreover, his testimony on that point is, at best, an implied offer to provide for them through his own mother and father in the latter's home, rather than on the husband's own obligation and responsibility. This belated and insufficient offer aggravates, rather than justifies, his continued failure to discharge his obligations as husband and father prior to that time. *Bruner v. Bruner,* 70 Md. 105, 16 A. 385.

On the question of the custody of the two infant children of these parties, the law applicable to this phase of the case is likewise well established. As stated by this court in *Carter v. Carter,* 156 Md. 500, 505, 144 A. 490, 492: "It is the rule of the common law that parents have

the natural right to the custody of their children, and that, as between the mother and father, the primary right to the custody of the children is in the father, since it is his duty to provide for his children's protection, maintenance and education. * * * But this rule must yield to the paramount consideration of what will be the best interest of the children and most conducive to their welfare; and the court will accordingly exercise its sound discretion and award the custody of the children according to the exigencies of the particular case, * * *."

Subsequent to the decision in *Carter v. Carter, supra* (January 31, 1929), Chapter 561 of the Acts of 1929 was passed (now codified under the title of "Parent and Child" as Article 72A of the Code of 1939). This provides that: "The father and mother are the joint natural guardians of their minor child and are equally charged with its care, nurture, welfare and education. They shall have equal powers and duties, and neither parent has any right superior to the right of the other concerning the child's custody. If either the father or mother dies, or abandons his or her family, or is incapable of acting, the guardianship devolves upon the other parent. Where the parents live apart, the court may award the guardianship of the child to either of them." Section 1.

Further strong support of the principle governing the court's duty in awarding custody of children is found in the case of *Kartman v. Kartman,* 163 Md. 19, 23, 161 A. 269, 270, where in an opinion by Judge Sloan the court says: "Courts are bound, in determining the fate of children, and in fixing the environment which is thereafter to direct the course of their lives, to recognize the natural right of parents to the custody of their children, and unless convinced that it would be injurious to their welfare, to maintain the relationship which society has always recognized as the one most to be desired. Ordinarily the court or judge who has had the parties before him, has the best opportunity to observe their temper, temperament, and demeanor, and so decide what would be for the

child's best interests, and unless there is some sound reason to the contrary his findings ought not be disturbed. The conclusion at which this court has arrived is at variance with that of the chancellor, and our reasons should therefore be set out." *Kartman v. Kartman,* *supra; Barnard v. Godfrey,* 157 Md. 264, 145 A. 614; *Piotrowski v. State,* 179 Md. 377, 382, 18 A. 2d 199; *Maddox v. Maddox,* 174 Md. 470, 488, 199 A. 507.

In the recent case of *Watkins v. Watkins,* Ind. Sup., 47 N. E. 2d 606, 607, the rule recognized by this court is further emphasized, namely, that "the welfare of the child is paramount to the claims of either parent, and its care and custody should be awarded with regard to the best interests of the child."

In the case before us there are two infant children who, at the time their father (appellee) left them in February, 1938, were five and two years of age, respectively. From their birth until the time of the decree from which this appeal is taken, they have been together and in the custody of their mother (appellant) who has faithfully borne the burden of parental duties and obligations, and has done so for over three years of that time without any support or help of any kind from the father. There is no allegation, or even suggestion, that the mother is unworthy or unfitted in any respect to continue to properly care for both of her children, or that their best interests and welfare would not be promoted by the environment in which she is rearing them. On the contrary, there is affirmative indication that the well being of the children would be best served by keeping them together as brother and sister, and by preventing a severance in this relationship even though the parents have made a failure of their own relationship as husband and wife.

While this court feels that under existing conditions, as shown by the record, there should be no separation of these children but that the custody of both of them should continue with the mother, the father should, of

course, be given the right to see them at all reasonable times. It is also to be borne in mind that, under the statute referred to (Art. 16, Sec. 41) any order that may be passed in relation to the children may at any time thereafter be annulled, varied or modified on their behalf. The amount to be charged against the father (appellee) for their support and maintenance will be left to the determination of the chancellor in remanding the case.

*Decree reversed and cause remanded. Costs to be paid by appellee.*