## MARY A. IRR *v.* DESIRE A. IRR.

*Divorce—Abandonment.*

A bill by a wife for divorce on the ground of abandonment
*held* rightly refused, the husband having merely moved to a
room other than that occupied by the wife, and withdrawn his
support from her, as a result of her association with their four
grown children, all living in the parents' house, in an attitude
of disrespect and insubordination towards him, adopted appar-
ently because of his purchase of a farm to protect himself and
the wife from want in their old age.

*Decided April 7th, 1926.*

Appeal from the Circuit Court of Baltimore City (SOL-
TER, J.).

Bill by Mary A. Irr against Desiré A. Irr. From a decree
dismissing the bill, plaintiff appeals. Affirmed.

The cause was argued before URNER, ADKINS, OFFUTT,
DIGGES, and PARKE, JJ.

*G. Joseph Walpert,* with whom was *Herman T. W. Hei-
miller* on the brief, for the appellant.

*John L. G. Lee,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

The appeal in this case is by Mary A. Irr from a decree
of the Circuit Court of Baltimore City dismissing her bill
of complaint for a divorce *a mensa et thoro* from her hus-
band, Desiré A. Irr. The grounds alleged in the bill of
complaint are desertion and cruelty. The bill was filed
March 31st, 1924, and alleges that the complainant and de-
fendant were married twenty-nine years prior to that time

in the City of Buffalo, State of New York; that they have four children born of said marriage, all of whom are of age: first, a daughter, twenty-eight years of age, married; second, a son, twenty-six years of age, unmarried; third, a daughter, twenty-four years of age, married, and, fourth, a daughter, twenty-two years of age, unmarried; that three of said children have been living with the complainant; that about the 15th of May, 1924, and continuously since that time, the defendant has treated the complainant with great cruelty and harshness, stopping his support of her, and on the first day of June, 1924, moving to another part of their home, thereby cutting off their marital relations in coverture to which she is entitled under the law; that his treatment of her since that time has become intolerable; that he had at that time declared his intention to desert and abandon the complainant; that since the 15th of May, 1924, the defendant has failed to provide for and support the complainant as he is in duty bound so to do, although he is living under the same roof with her and their children and is a man of considerable means and property; that he is the sole owner of a 180-acre farm in Harford County, Maryland, of the value of $8,000; that he has cash in a building association and bank, and is the owner, together with the complainant, of the property in which they reside on Belvedere Avenue, Baltimore City; that the Belvedere Avenue property cost $4,500, and was purchased with funds belonging to the complainant, which the complainant had acquired from the estate of her father, but that said property is held by her and her husband as tenants by the entireties, although said property actually belongs to the complainant; that the defendant, while having a good position in the Government Printing Office at Washington, D. C., has refused to support her, and also refused to deliver to her a deed for the Belvedere Avenue property in order that she might sell the same for her support, which refusal resulted in placing her without any means of support except for what her children choose to give her; that the complainant is destitute of means of

supporting herself during the pendency of the suit, or defraying costs and expenses incident to the same, and is now under a physician's care and unable to work; that the complainant has always behaved herself as a faithful, affectionate and chaste wife towards her husband, working with him and for him until her condition of health prohibited her from doing further work; and that her conduct has always been above reproach.

The prayers of the bill are, for a divorce *a mensa et thoro;* for alimony *pendente lite* and permanent; and "that the said Desiré A. Irr may be further required to deliver up to your oratrix possession of her said home in which they now reside, in order that she may occupy and hold the same as her separate property and home."

The defendant answered the bill, denying all of the material allegations thereof, but admitting moving to another part of their house, thus cutting off their marital relations, as alleged in the bill, and averring that this action was caused by complainant informing him that she could not occupy the same bed and room with him and be annoyed by the alarm clock which defendant kept in his room for the purpose of awaking him in time to meet his train for Washington, where he was and is still employed. Defendant further alleges in his answer that he has not been providing support for his wife since June, 1924, as he had prior thereto, although he has since that time paid the taxes, insurance, water rent, interest on his mortgage held by the Provident Savings Bank of Baltimore on the premises occupied by the respondent and his wife, a part of the fuel for heating the house, doctors' bills for attendance on his wife, and repairs done to the house. He admits he is living under the same roof with the complainant and their children, but alleges that he so lives in a very uncomfortable manner, because of the unpleasant treatment by the complainant. Defendant admits that he owns the farm in Harford County of approximately the number of acres alleged in the bill of complaint, which he purchased for the sum of $3,700, and upon which

there still remains a mortgage of $2,000, placed at the time of the purchase; that at the time he purchased the same, he had the deed therefor made conveying the farm to the complainant and himself as tenants by the entireties, but that the complainant refused to allow the place to be deeded to her and to defendant, and, therefore, in order to carry out his contract of purchase, he had to have the papers changed to make the conveyance to him alone. He admits having about $210 in the bank and about $1,800 in the building association, which he had been trying to save to pay off this mortgage. He admits that the residence known as No. 3 Belvedere Avenue stands in the name of himself and wife as tenants by the entireties; that it cost $4,350; but alleges that only $500 of the complainant's money was used in the purchase of the property; that this $500 was derived from property located in Buffalo and in the name of the complainant, though all that had been paid on the Buffalo property, except $1,200, which the complainant had received from her father's estate, was paid by the defendant out of his earnings; that at the time of the building of the Buffalo property his wife and himself mortgaged the same for $4,500, which mortgage stayed on the property until it was sold by his wife for $6,250. He further denies that the Belvedere Avenue property is actually the property of his wife, as alleged in her bill, but alleges that the same has been kept up and improved solely by his labors; that he has a position in Washington, D. C., in the Government Printing Office, which pays him about $55 per week; that out of this amount he has to board himself, pay transportation to and from Washington, keep up interest, taxes, insurance on said properties, and payments on said mortgage, and that when all of these are paid he has but a small amount left; that since June, 1924, he has not supported the complainant, as he had prior thereto, because his wife saw fit to have her daughter, Elizabeth Clark, and her daughter's husband and one child, occupy the said Belvedere Avenue property; that the complainant, backed up by said occupants in said property, has made

defendant's life almost intolerable; that the complainant has never asked him to convey the Belvedere Avenue property to her so that she might dispose of the same, as alleged in her bill of complaint, but he refuses to execute any such deed because the property belongs to both of them, and he is ready, willing and able and has always offered to support his wife if she will return to her former habits and not join with others and make his home unfit for his abode, but he positively refuses to support the others of his family, as they are of age and have positions and are able to maintain themselves.

As stated, the bill in this case alleges as the grounds of complaint, first, cruelty; second, desertion. During the taking of the testimony, which was done in open court, the only basis for the allegation of cruelty on the part of the complainant, as shown by the evidence, was the testimony of the wife that at times, when she was sick, in her opinion, the defendant was not sufficiently solicitous of her condition and did not express or show the sympathy which she thought should be the conduct of a proper husband. Whereupon the lower court stated: "I suppose counsel will abandon that charge"; and counsel for defendant said: "Then the cruelty is dropped and abandoned." It will, therefore, be seen that it is unnecessary for us to comment further upon this charge than to say that after considering the whole record we find no evidence whatever sufficient to substantiate any such charge.

The law controlling in this class of cases as to desertion is firmly settled in this state, and has been many times stated by this Court, the latest being in the case of *Klein v. Klein,* 146 Md. 27, in which case it was said: "Abandonment or desertion, as a marital offense, consists in the voluntary separation of one of the married parties from the other, or the refusal to renew suspended cohabitation, without justification either in the consent or the wrongful conduct of the other party. * * * It must be the deliberate act of the party complained of, done with the intent that the marriage rela-

tion shall no longer exist. * * * Separation and intention to abandon must concur, and desertion does not exist without the presence of both. The two need not begin at the same time, but desertion begins whenever to either one the other is added. * * * A divorce for abandonment and desertion may be granted without regard to duration." See cases cited therein; to which may be added *Lynch v. Lynch,* 33 Md. 328; *Etheridge v. Etheridge,* 120 Md. 11. Applying the law as thus determined to the facts of the instant case as disclosed by the record, we are of opinion that the action of the chancellor in dismissing the bill of complaint was correct.

The evidence as adduced on behalf of the complainant does not constitute desertion as heretofore defined by this Court. We find that the defendant is fifty-nine years old and the complainant fifty-seven; that they were married in 1895 in the city of Buffalo, New York, where they owned property and lived until about the year 1919, when they moved to Baltimore, at which time they purchased the property in which they now live on Belvedere Avenue, this property being held by the husband and wife as tenants by the entireties; that there were four children born of this marriage, all of whom were grown at the time the proceedings were instituted, and three of whom were living in the Belvedere Avenue house with their parents at that time, an unmarried son twenty-six years old, an unmarried daughter twenty-two, and a married daughter with whom were also living her husband and one child. The evidence shows that the husband was a man of industrious, thrifty and temperate habits, whose occupation or employment for the greater part of the time after coming to Baltimore was that of a wood engraver; that in this employment his hours were long and he did much overtime work, the nature of the work being such as made him apprehensive that he might at any time break down under the strain, and for this reason he was desirous of owning a farm, by means of which he might make a support for himself and wife in their declining years, at

a time when he could no longer pursue the occupation for which he was trained and fitted; that with this end in view, in February, 1923, he purchased a farm of 156 acres located in Harford County, Maryland, the purchase price being $3,750, $1,750 being paid in cash and a mortgage for $2,000 given. The deed to this farm, at the direction of the defendant, was made to himself and wife as tenants by the entireties, but upon the presentation of the mortgage to the wife for her signature, she refused to allow any interest therein to be transferred to her, and refused to sign the mortgage. The defendant, in order to carry out his contract of sale previously made, was then compelled to have the farm transferred to himself alone. From this time the attitude of the complainant and the children living in the home became antagonistic to the defendant, the children agreeing with their mother in opposition to the purchase of the farm. In the summer of 1923 the defendant lost his employment in Baltimore City, and remained unemployed for about three weeks. On August 21st, 1923, he secured employment in the Government Printing Office in Washington, D. C., as a photo-engraver, and from that time until February, 1924, commuted from Baltimore to Washington, leaving his home at six o'clock in the morning and returning about seven in the evening. During this period it was necessary for him to arise early in the morning, and for that purpose he used an alarm clock, to which the complainant strenuously objected, as she claimed the ticking of the clock in her room, and the ringing of the alarm, in her nervous condition, distracted her. The defendant, in order that the clock might not worry her, left the room in which she was sleeping and removed to the garret of the house. The evidence further shows that whatever breakfast the defendant had before he left was prepared by himself, and although he returned home at seven o'clock or a quarter of seven in the evening, the family dinner was always finished upon his return; that finding he could not stand the commuting during this season of the year, under the conditions existing, for the period of

ten weeks, without any opposition expressed on the part of his wife, he lived in Washington, returning home about every two weeks; that during his absence in Washington his grown son and one of his daughters continued to live in the home with their mother, and that during this period he regularly sent his wife eight dollars per week, paid the taxes, insurance, water rent, fuel and light bills, the interest on the mortgage on the home in which they lived, and reduced the principal of the mortgage from $2,500 to $1,300; that at the time he returned to his home in April, 1924, he continued to occupy the garret until hot weather, when he moved down on the second floor in a room across the hall from that occupied by his wife; that during the month of June the complainant was on a visit to friends or relatives in Buffalo, and during her absence the second married daughter, her husband and child, moved into the home; that at the time she left for this visit, which was arranged by her son, the defendant gave her twenty-one dollars, and eight dollars upon her return; that he had never given her any money after that time, and on being asked by her for money, he told her that he was perfectly willing to support her if they would live as formerly, but that he would not give her further money unless the children were compelled to leave. Shortly before the proceedings were instituted, when asked by her attorney for an interview, the defendant expressed himself as anxious and willing for a reconciliation of their differences, but insisted that the children were all grown and able to support themselves, and that by reason of their disrespect and conduct towards him, especially the son Henry, they would have to leave. The testimony of the defendant, which is uncontradicted, shows that the whole family were united in their disrespect and attitude of insubordination towards the husband and father, the words and actions of the son particularly being such as no decent and self-respecting father should be compelled to submit to; and this testimony is corroborated by the son, as indicated by the following: "Q. Your father has made the statement that

you have been very abrupt to him and used very strong language to him. Please tell his honor whether that is correct or not? A. Well, some of these things have been imagined. I imagine because I have worked in the shipyard and been in the Marine Corps so that I would not need a gun to do the things he tells me I have to do. I could do it with my own hands." (Referring to the testimony of his father that on one occasion, after abusive language, the son had a pistol lying on the table.) "The Court: Is that your attitude? The Witness: I would not need a gun to do it. I think I could do it with my own hands."

It is unnecessary to lengthen this opinion with the details of the testimony disclosed by the record, further than to say that in our opinion the whole record presents a picture of a father who has supported a wife and reared a family of four grown children, having the wife supported and encouraged by the attitude and conduct of their twenty-six-year-old son, making the life of the father in his own home well-nigh unbearable, without any justifiable cause or provocation, the only apparent reason being that in order to safeguard himself and wife from want in their old age he purchased a farm upon which he might be enabled to make a livelihood; and, when this conduct on the part of the whole family had made his association with them so disagreeable and obnoxious that he was compelled to live the few hours of each day, when he was not at work, in the unfinished garret of their home, his occupancy of that part of the house is attempted by the wife to be made the basis of an action for divorce. The testimony having been taken in open court below, we have no doubt that the picture presented to us was intensified in that court by the attitude of the witnesses on the part of the complainant. In our opinion such conditions do not warrant a divorce on the ground of desertion, and the decree of the lower court must be affirmed.

> *Decree affirmed, the appellee to pay the costs.*