EMMA J. BENNETT *vs.* NATHANIEL N. BENNETT.

Desertion, in the marriage relation, consists in the breaking off of cohabitation with a determination not to renew it.

A separation resulting from necessity, as from the inability of the husband to provide for the support of his wife, does not constitute desertion.

Where, in a suit for a divorce, a wife asked for the custody of two daughters of the marriage, aged five and nine years, and it was found that the husband was of good moral character and attached to the children, but from business incapacity and failure to find employment was unable to support them, but that his mother and sister, who had abundant means and were of the best character, were willing to assume the expense of their support and education, it was held that it was not a case where the court ought to give the custody of the

children to the wife on the ground of the unfitness of the husband for their custody.

Where, upon a petition for a divorce brought by the wife, a committee found certain acts of the respondent, which did not constitute desertion, nor show his unfitness for the custody of his children, but did not find the fact of desertion or of unfitness, and the court, without hearing further evidence and solely upon the facts so found, found that the respondent had deserted the petitioner and that he was unfit to have the custody of the children, it was held that the court had no power to find these facts, and a decree founded upon such finding was set aside as erroneous.

BILL for a divorce and for the custody of children; brought to the Superior Court in Fairfield County.

The ground of divorce alleged in the petition was the wilful desertion of the petitioner by the respondent, with neglect of all the duties of a husband, for more than three years before the bringing of the petition. The custody of the children of the marriage, two daughters of five and nine years of age, was sought on the ground that the respondent was an unfit person to have the custody of them on account of his indolence and thriftless habits.

The case was referred to a committee, who found at great length and in much detail the conduct of the respondent for several years prior to the bringing of the petition, but did not find in terms that he had been guilty of wilful desertion, nor that he was unfit to have the custody of the children. The facts thus found by the committee are sufficiently stated in the opinion.

The court (*Sanford, J.,*) passed a decree which, after setting out the report of the committee, proceeded as follows:

"And now, at this present term, the court accepts said report and finds the facts therein contained to be true; and from such facts so reported this court doth find that said respondent wilfully deserted the petitioner, and continued said desertion with total neglect of duty on his part, for a period of more than three years next preceding the bringing of said petition; and that, from the facts found in said report, the said respondent is unfit to have the charge and custody of the children in said petition named.

"Wherefore it is adjudged, ordered and decreed by this

court that the said Emma J. Bennett be and she is hereby divorced from the said Nathaniel N. Bennett, and discharged from all the duties and covenants which she is under by reason of the marriage aforesaid, and she is hereby declared to be single and unmarried.

"And it is further ordered, adjudged and decreed, that the custody, care and education of the children in said petition named, shall be had, held and controlled by the said petitioner, Emma J. Bennett, until further order of this court duly made, and that the said respondent shall at all reasonable times be permitted to see and visit said children."

The respondent brought the record before this court by a motion in error, assigning as error,

1st. That the facts found by the committee are insufficient and afford no just or legal ground for the decree of said court.

2d. That the committee has not found, nor can it fairly or rightfully be inferred, that the respondent ever intended to desert or ever did in fact desert the petitioner.

3d. That the committee has not found the respondent unfit to have the care and custody of his children, nor any facts from which the same could be fairly inferred.

4th. That the finding of the court of those facts upon the facts found is without authority, unwarranted and erroneous.

*A. S. Treat* and *C. Sherwood*, for the plaintiff in error.

1. So much of the decree as declares desertion on the part of the respondent is unwarranted by the facts and untrue. Not only actual desertion must be shown, but also an intent to desert. 1 Bishop on Mar. & Divorce, § 777; *Ahrenfeldt* v. *Ahrenfeldt*, 1 Hoffm., 47; *Gregory* v. *Pierce*, 4 Met., 478. " Desertion is a breach of matrimonial duty, and is composed of, first, the actual breaking off of the matrimonial cohabitation, and secondly, an intent to desert in the mind of the offender. Both must combine to make a desertion complete." *Bailey* v. *Bailey*, 21 Gratt., 43, 47. · Inability to support and maintain a wife, is no proof of desertion on the husband's part; nor can desertion be rightfully inferred from it. *Palmer*

v. *Palmer*, 22 N. Jer. Eq., 88, 90; 1 Bishop Mar. & Divorce, § 793.

2. So much of the decree as declares that the respondent is unfit to have the charge and custody of the children is erroneous and not sustained by the facts found by the committee. The finding of the committee distinctly shows that the respondent is of good moral character, and a competent book-keeper, and that he has great attachment for his children. And if without means himself, it is shown that his mother and sister are ladies of culture and means and willing to support and educate the children. The petitioner, it appears by the finding, can offer no greater advantages.

3. The court had no power to find further facts from the facts found. Desertion not having been found, nor the unfitness of the respondent for the custody of the children, the court had no power to find these additional facts without hearing further testimony.

*W. K. Seeley*, for the defendant in error.

1. The question whether the respondent had deserted the petitioner for the three years next preceding the bringing of the petition was a question of fact, and not of law, and the finding of the Superior Court upon that question is conclusive; and the same is true of the question whether the respondent was or was not unfit to have the custody and charge of the children. *Norwich & Worcester R. R. Co.* v. *Kay*, 22 Conn., 603–7; *Callender* v. *Colegrove*, 17 id., 26. The claim is, that taking the whole evidence and facts recited by the committee, the court came to a wrong conclusion.

2. This court cannot review the finding of the Superior Court upon these questions of fact. *Norwich & Worcester R. R. Co.* v. *Kay*, supra; *Lyme* v. *East Haddam*, 14 Conn., 394; *Sharp* v. *Curtis*, 15 id., 534; *Murphy* v. *N. York & N. Haven R. R. Co.*, 29 id., 496; *Dudley* v. *Deming*, 34 id., 169, 174; *Congdon* v. *City of Norwich*, 37 id., 414.

PARDEE, J. In June, 1873, the petitioner brought a petition to the Superior Court asking for a decree divorcing her

from the respondent. She alleged that he wilfully deserted her on the first day of January, 1868, and had ever since continued his desertion, with total neglect of all the duties of the marriage covenant on his part to be performed. The court appointed a committee to inquire and report as to the truth of this allegation.

From the report of the committee it appears that the petitioner and the respondent were married in October, 1863, with knowledge on her part that he had no property; that he was in the receipt of $1,200 per annum as a book-keeper; that they lived together in Philadelphia during the year following their marriage; that from October, 1864, to May, 1865, he was in Europe, and by his request she was at her father's house in New York, where she was delivered of a child, her husband contributing but $200 towards her support during his absence; that upon his return from Europe they lived together about two months in Philadelphia, when by reason of his inability to support her, and upon his request, she returned to her father's house, where she remained during most of the time until the spring of 1867, the respondent contributing less than $300 towards her support during this last named period; that in the spring of 1867 he engaged in business and took her to Philadelphia, where they lived together until December, 1868, when in consequence of his inability to support her in a comfortable manner, and upon his request, she returned to her father's house, and there remained until May, 1869, having meanwhile been delivered of a child, her father bearing the expenses of her confinement; and that in May, 1869, she returned to Philadelphia, and lived with the respondent during two months, when, his business proving unsuccessful, she returned upon his request to her father's house, where she remained until April, 1870, the respondent contributing less than $60 towards her support after her return. In February, 1870, the respondent's mother hired a house in New Jersey, and was ready to furnish it for him and contribute $25 monthly towards his expenses. He then asked the petitioner to live with him in said house, and was very desirous that she should do so, but did not commu-

nicate to her the offer of his mother to contribute towards his expenses. The petitioner refused to leave her father's house without some additional guarantee or assurance of support. In May, 1870, she came to Bridgeport with her children, where she has ever since resided. The respondent came there in the following June, and asked for an interview, but she refused to see him; he came again in June, 1871, and asked to see the children, and was told that they were in New York; he saw them there, but did not ask to see the petitioner. He has contributed nothing towards her support during her residence in Bridgeport. The petitioner and the respondent kept up a correspondence with each other during all their married life, and he occasionally visited her at her father's house until the winter of 1870; and she testified that he had never seemed unwilling to do what he could for her.

By this report it is made certain that during a large part of the married life of these parties, the wife has lived separate from her husband at his request, because of his inability to furnish support for herself and their children in a satisfactory manner. But this does not of itself constitute desertion on his part. For the purposes of this case it is sufficient to say that the offence of desertion consists in the cessation of cohabitation, coupled with a determination in the mind of the offending person not to renew it. This intent is the decisive characteristic, and the question of intent is always a question of fact, and must be proved either by direct evidence or as the necessary and certain consequence of other facts clearly proved. Mere separation may result from necessity or accident and be much against the will of both parties. The marriage contract does not furnish an absolute guarantee to the wife that the husband shall at all times be able to relieve her from all efforts to support the family; inability upon his part to maintain his wife may result from his incapacity for business, from losses, from sickness, from misfortune in any one of its manifold forms. If as a consequence she is compelled to support herself by her own efforts, or to rely temporarily upon the assistance of relatives or friends, and the parties are thereby forced into a state of separation, there remaining

a desire and an intent on the part of both to resume cohabit-ation whenever circumstances will permit, such separation is not desertion in the eye of the law. The report discloses repeated attempts on the part of the respondent to establish a home for himself and family, followed, it is true, by repeated failures; it discloses persistent efforts to bring the petitioner back after her last departure to her father's house; efforts which ceased only after her refusal to see him, or read a letter from him, or make any answer to a suggestion of help from his mother. It does not disclose any intent on his part to live separate from his wife after he should become able to make a satisfactory home for both; and it does show affirma-tively that he has always been willing to contribute towards her support to the extent of his ability.

From the facts thus reported to the Superior Court that court has found that the respondent wilfully deserted the peti-tioner; that is, that he ceased cohabitation with the determi-nation not to renew it; thus, without hearing any testimony, finding a fact in addition to those found by the committee; a fact which it was the duty of the committee to find, if it existed; a fact which upon the evidence the committee refrained from finding; a fact which is made the basis of the decree of divorce.

Again, the report finds that the respondent is of good moral character, a member of Dr. Breed's Presbyterian Church of Philadelphia; that while in the society of his children he manifests parental attachment to them; that he is a competent book-keeper, but is without means or regular employment; and that while he appears to have made exertions to get into employment, for some reason he has always been unsuccessful; that his mother and sister are both cultured ladies of the high-est character morally and socially and of sufficient pecuniary ability to support and educate the children, and are willing to assume upon themselves such support and education. From this the court has found that the respondent is unfit to have the charge and custody of his children. But the finding dis-closes no want of moral qualifications; and, if food, clothing, and education are secured to the children in abundant meas-

ure, the fact that the money by means of which this is accomplished is given to and not earned by the respondent, is of no legal significance. There are cases in which courts have assigned children of tender age to the care of the mother upon the breaking up of the family, preferring their good to the strict rights of a father who is either unable or unwilling to live with them and their mother; but this report presents no facts as a basis for such action. The committee has not found either moral or legal unfitness; without hearing any testimony the court has found this second fact in addition to those found by the committee; a fact which is made the basis of a decree depriving the respondent of the care and custody of his children until the further order of the court. Thus the decree is made to rest upon the finding by the court of two facts neither of which had been found by the committee and which the court had no power to find except from evidence presented upon a supplemental hearing.

In the case of *Brady* v. *Barnes*, 42 Conn. R., 512, we have recently had occasion to determine that the court has no power to supplement reports of committees by finding additional facts without evidence.

The decree must be set aside.

In this opinion the other judges concurred; except PARK, C. J., who dissented.