## THOMAS COLLINS
### vs.
## KATHERINE S. COLLINS

Superior Court     New London County     File #10381
Present: Hon. ALLYN L. BROWN, Judge.
George C. Morgan,          Attorney for the Plaintiff.
Arthur Keefe,                Attorney for the Defendant.

## MEMORANDUM FILED MARCH 20, 1935.

BROWN, J. In this contested action for divorce on the ground of desertion, it is undisputed that the couple was married on July 14, 1909; that the plaintiff lived in New London continuously for more than three years next before the bringing of this complaint, and that the parties last lived together at Paterson, New Jersey, on March 30, 1930. The defendant's answer denies that she then deserted the plaintiff, and further alleges that he then deserted her. The vital question therefore is whether in legal contemplation the defendant deserted the plaintiff when the parties separated on March 30, 1930.

The plaintiff is a silk worker 48 years of age, and during most of his married life until May, 1934, was steadily employed at wages varying from $18. to $50. per week. The defendant has a daughter by a previous marriage. There was

no child by this marriage. Until 1923 the couple lived in Paterson, New Jersey. They then moved to New London where he hademployment, and lived together there until the fall of 1929, when she moved back to Paterson. The plaintiff continued to live in New London where his work was, until January, 1930, visiting the defendant as frequently as he could, and furnishing her money for her support in Paterson. In January, 1930, he moved to Paterson and lived with her until they finally separated on March 30, 1930.

Throughout practically the entire time that they were living together the plaintiff turned over all of his earnings to the defendant. While they lived in Patterson prior to 1923 the defendant as well as the plaintiff worked, and from their combined earnings a home was purchased for $2,500., title being taken in their joint names. Upon their removal to New London, this was sold for $4,000., net, and subsequently a home was purchased in Waterford, title to which was taken in the name of the defendant alone. The defendant was not employed after the removal to New London, but the money turned over to her by the plaintiff was deposited in a joint account at the Mariner's Savings Bank. The defendant kept possession of the deposit book, however, and before trial had withdrawn the entire amount so deposited. The defendant is still the sole owner of the Waterford house, although there are encumbrances thereon. She appropriated all of the money realized from the sale of the household furniture when she left in 1929.

From the time the couple moved to New London in 1923, the defendant, was very much dissatisfied at having to leave Paterson, and never became reconciled to living in this state She repeatedly expressed to the plaintiff her hatred for the place and the people, and again and again would leave their home without notice to him, to return to New Jersey, or to visit her daughter in Scranton, Pennsylvania, often being away weeks at a time. In September, 1929, she had gotten back from such an excursion while he was gone on vacation. Upon his return she locked him out of the house, and a few weeks later finally moved back to Paterson to live. The defendant admits that throughout their married life the plaintiff has conducted himself properly. The defendant, in addition to persistently accumulating the plaintiff's earnings within her exclusive control, at times expended them for the benefit of her daughter. Throughout their married life, the plaintiff was forced to get his own breakfasts, and on many occasions

the defendant locked her bedroom door against him at night.

In interpreting the conduct of the parties at the final sep-aration, resort may properly be had to the history of their twenty-one years of marital life, above outlined, for such light as it affords. From the time the plaintiff moved back to Pat-erson in January, 1930, and resumed living with the defendant in the tenement she rented with the money he provided, until he finally left, the defendant spent but one night a week with the plaintiff, staying the other nights at the home of her daughter, to whom she was then giving money he furnished. He continued to pay her $20 per week until the last two weeks of his stay. He was then out of work, and his funds nearly exhausted, and he accordingly told her he couldn't continue the weekly payments. Thereupon the defendant told him since his money was gone, he could get out, and that she didn't want to see him or hear from him again. The plaintiff honestly and with good reason believed that she meant just what she said, and left.

Upon all the evidence I am satisfied that for at least several years prior to this, the defendant had tolerated cohabitation with the plaintiff only for the money she could extract from him, and that knowing at this time he was out of work, with no prospect of obtaining any, and that she had thoroughly plucked him of his past earnings, she meant exactly what she said by her statement above recited. Her conduct therefore amounted to a cessation of cohabitation with a determination upon her part not to renew it, thus entitling the plaintiff to a divorce on the ground of desertion. Bennett vs. Bennett, 43 Conn. 313; Dow vs. Dow, 97 Conn. 488, 490.

In answer to the court's inquiry, the plaintiff testified that he had not subsequently asked the defendant to resume living with him because he was "afraid she might say yes". Rely-ing upon this answer, the defendant contends that it shows conclusively that the plaintiff consented to her desertion of him and that so he is precluded from relief herein. Todd vs. Todd, 84 Conn. 591, 593; Spargo vs. Spargo, 107 Conn. 406. I do not so construe the evidence. The fact is that the de-fendant had in the fall of 1929 deserted the plaintiff by lock-ing him out and moving back to New Jersey to live. Not-withstanding this and that his employment was still in New London the plaintiff, at considerable expense and inconven-ience to himself, accomplished the reconciliation with the defendant, in consequence of which he apparently finally even gave up his employment at New London, and they were living

together when this final break occurred. That this final desertion by the defendant was at its inception against the plaintiff's will, appears from her own testimony of his expressed regret at the time because of her lack of love for him, and her not wanting to have him around. Subsequently the defendant pursued the plaintiff for support by complaint to the prosecuting attorney of the New London City Court. So far as appears, the plaintiff's attitude of mind indicated by his answer above quoted, may well have eventuated after that experience. And as in the case of **Spargo vs. Spargo** above cited, it is evidenced by no overt acts, but merely by the plaintiff's testimony at the trial as quoted. So as stated in the opinion of Justice Maltbie in that case, **at page 408,** quoting from an opinion by the late Justice Holmes: "The analogies of the law are against determining rights upon the basis of the emotions or motives of a party not manifested by overt acts, and, in the absence of an offer by the wife to return, it would be mere conjecture to conclude from such expressions that he would not have taken her back, perhaps gladly, had she sought to resume marital relations."

The plaintiff's petition for a divorce on the ground of desertion is granted.