GEORGE ALDEN *v.* FRANCES ALDEN

SUPERIOR COURT     HARTFORD COUNTY     FILE No. 107352J

Memorandum filed April 24, 1959

*Butler, Volpe, Garrity & Sacco,* of Hartford, for the plaintiff.

*John Ottaviano, Jr.,* of New Haven, for the defendant.

MacDonald, J. Plaintiff, in his original complaint, sought a divorce from his wife on the ground of desertion claimed to have continued from August 21, 1953, to the date of the complaint, September 27, 1956, but later amended it to cover the period from January 1, 1955, to February 11, 1959, there apparently having been some resumption of marital relations in December of 1954.

Briefly summarized, the evidence indicated that in August, 1953, while the parties were living in Philadelphia in a house which they had purchased some three and one-half years before, plaintiff walked out one morning, after some kind of an argument the night before, without saying where he was going or when he was coming back; that several days later, defendant reached him by telephone at the home of his half brother, Mr. Young, in Simsbury, Connecticut; that he returned to Philadelphia a few days later and demanded his clothes, which defendant refused to give him; that plaintiff immediately returned to Connecticut and lived with and worked for Mr. Young, for whom he had worked some years previously; that thereafter, in December, 1953, and July, 1954, he visited the home in Philadelphia briefly and asked defendant to return to Connecticut with him and also made one or two such requests by telephone and letter without at any time offering her a specific place in which to live except, according to his testimony, which was denied by defendant, one mention of the possibility of living with Mr. Young in his four-room house. There was some evidence, somewhat conflicting, that plaintiff repeated these requests a few times after December, 1954, and during the three-year period of desertion claimed in the amendment to the complaint.

It seems clear from the evidence that defendant refused to leave the Philadelphia home to go to Connecticut unless plaintiff had a definite home to offer

her—according to her testimony, any kind of a home; according to his, some place other than Mr. Young's house or a rented home; that plaintiff suggested that they sell the Philadelphia home and put the proceeds into a house in Connecticut but that he, after defendant's consent to such an arrangement, never followed this idea up by coming to Philadelphia to help effect such sale. As a matter of fact, plaintiff's attempts to arrange for a home for defendant in Connecticut do not appear, even from his own testimony, to have been very strenuous or convincing—to the court as well as, apparently, to the defendant.

In order to give fair consideration to defendant's claimed conditional refusal to move to Connecticut, it is necessary to view it against the background of the rather nomadic life of the parties prior to their separation in August, 1953. Plaintiff's frequent changes of jobs forced him to move from city to city and state to state during their entire married life. After living in a one-room apartment in Hartford, they lived for a time in a hotel in New Hartford and then in a rented house in Pleasant Valley, all in Connecticut. Plaintiff next took a job in Chambersburg, Pennsylvania, and lived there alone while defendant, with his consent, stayed with her parents in Philadelphia. In 1944, she went to live with him in Fort Morningside while he worked there for about a year—after which he worked for the merchant marine on a tanker during 1944 and 1945, while she of necessity again stayed with her parents in Philadelphia. She then went with the plaintiff for over a year to New Haven, where he had several jobs, after which he went to work in Ellenville while she once again, with his full approval, remained in Philadelphia with her parents. The defendant herself had started working in 1947 and finally, with the help of her parents and a payment of $500 by

plaintiff, they purchased the home in Philadelphia where they lived until the separation of August, 1953, and where, indeed, the defendant still lives with the couple's daughter, Alice. It is against this background that the decision must be made as to whether defendant's refusal to leave and sell the Philadelphia home to join plaintiff in Connecticut constitutes the wilful desertion which, under our statute, is a ground for divorce. Obviously, since plaintiff rather than defendant actually walked out of the last jointly occupied home and stayed away from it, any such wilful desertion on the part of defendant would have to be a constructive desertion, based upon a refusal on her part to go with her husband wherever his work called him—either an absolute refusal or, as apparently claimed here, a conditional refusal with unreasonable conditions imposed.

The desertion for three years which constitutes a ground for divorce under our statute involves the coexistence of the following four conditions: (1) cessation from cohabitation, (2) an intention on the part of the absenting party not to resume it, (3) the absence of the other party's consent, and (4) the absence of justification. Rev. 1958, § 46-13; *Lindquist* v. *Lindquist,* 137 Conn. 165, 167; *Todd* v. *Todd,* 84 Conn. 591, 593. In the present case, only the first condition is met with absolute certainty for the period covered by the amended complaint.

With respect to the second condition, it is difficult to infer from defendant's refusal to move to Connecticut, under the circumstances, an intention on her part not to resume cohabitation. This is especially true of the period covered by the amended complaint, after January 1, 1954, when she resumed relations with the plaintiff in Philadelphia. Although plaintiff did testify that he continued to ask her to come to Connecticut after that date, there was

no evidence that he did much of anything to satisfy her insistence that there be some assurance of a suitable place to live before disposing of their home in Philadelphia—a condition which, if it was imposed, as claimed by plaintiff, cannot be termed unreasonable in view of the background described at length above.

With respect to the third condition, the absence of the plaintiff's consent to the separation during the three-year period is not convincingly demonstrated. It is true that, as claimed by plaintiff, an innocent plaintiff in an action based upon desertion is not prevented from prevailing because he did not, after the desertion, continue to press for reconciliation. *Riccio* v. *Riccio,* 131 Conn. 437, 438; and that one who has wilfully deserted her husband cannot prevail simply because he does not solicit her return. *Cordner* v. *Cordner,* 131 Conn. 356, 357. However, as against the background of the many prior separations which had plaintiff's consent, the absence of a clearly wilful refusal by defendant to cohabit after January 1, 1954, the statement by plaintiff that he stopped wanting defendant to come to Connecticut when he consulted Attorney Gorman about a divorce in September, 1956, and his admission that he told Attorney Sacco in June, 1957, that he no longer wanted his wife back with him, it is difficult to find a lack of consent by plaintiff to the separation arrangement during the three-year period claimed.

The fourth condition, absence of justification for the cessation from cohabitation, is closely interwoven, in the instant case, with the two just discussed. Our Supreme Court indicated in *Lindquist* v. *Lindquist,* 137 Conn. 165, 169, a reluctance to apply the doctrine of constructive desertion, stating, in part: "In no event could misconduct of an offending husband be held to afford a basis for a decree on the ground of constructive desertion unless it

was so improper as to defeat the essential purposes of the marriage relation or give the wife good reason to believe that cohabitation could no longer be continued with due regard to her health or safety or otherwise render continued cohabitation intolerable."

Although we are not concerned in this case with violence or misconduct as justification for "constructive desertion," the hesitation of our courts to apply this doctrine in situations where other circumstances might justify a cessation of cohabitation is indicated in the case of *Muscatello* v. *Muscatello,* 14 Conn. Sup. 498, where the court states, at page 500: "The desertion which under the statute is a ground for divorce is a 'wilful' desertion. It is an intentional cessation of cohabitation without justification or excuse. *Bennett* v. *Bennett,* 43 Conn. 313, 318; *Todd* v. *Todd,* 84 Conn. 591; *McCurry* v. *McCurry,* 126 Conn. 175. Certainly a cessation of cohabitation made necessary by events or conditions over which a spouse has no control is not wilful desertion. Nor is a separation for which there is justification on the part of the one who causes the separation wilful desertion. That is true whether the justification lies in the conduct of the other spouse or in vis major." The court concluded, in language which, although applied there to facts entirely different from those of the instant case, may, nevertheless, pretty well cover the situation here: "She is the victim of circumstances over which she has no control. Accordingly, it can not be found that she has deserted the plaintiff."

In weighing the evidence in this case on the elements of desertion just discussed, the court must have in mind the language repeatedly used by our Supreme Court on this general subject, as stated, for example, in *Casale* v. *Casale,* 138 Conn. 490, at pages 492, 493: "Marriage creates contractual ob-

ligations between man and woman of the most sacred and enduring nature. It is the basis of the family and the home and is therefore an institution upon which rests our whole way of life. For these cogent reasons the state has a very real and vital interest in the maintenance of the marriage bond. It is one which cannot be dissolved by the mutual consent of the parties, as can an ordinary contract. Recognizing that circumstances may arise which require, for the good of all concerned, including society itself, that the parties be released from their obligations, the legislature has prescribed that the parties may be divorced upon certain grounds by the courts. . . . In an action for a divorce on any ground, it is the duty of the court to make certain that sufficient and lawful cause is shown and that those conditions are present which the legislature has prescribed as pre-requisite to the granting of a decree. *Allen* v. *Allen,* [73 Conn. 54]; *Dennis* v. *Dennis,* [68 Conn. 186]; see *Gould* v. *Gould,* 78 Conn. 242, 262. . . . One of the essentials in an action of divorce for desertion is 'the cessation of cohabitation, coupled with a determination in the mind of the offending person not to renew it. This intent is the decisive characteristic, and the question of intent is always a question of fact, and must be proved either by direct evidence or as the necessary and certain consequence of other facts clearly proved.' *Bennett* v. *Bennett,* 43 Conn. 313, 318; *Campbell* v. *Campbell,* 110 Conn. 277, 279."

Having this fundamental policy in mind, the court cannot find, on the evidence as above discussed, that there was a wilful desertion by this defendant to justify granting a divorce to the plaintiff, and judgment may accordingly enter for the defendant.