## Jeno Toth *v.* Ida F. Toth

| | | |
|---|---|---|
| Superior Court | Fairfield County<br>at Bridgeport | File No. F.R. 113972 |

Memorandum filed January 11, 1962

*Wakelee & Isaac,* of Fairfield, for the plaintiff.

No appearance filed for the defendant.

Pastore, J. This is a divorce action brought by complaint dated May 1, 1961, of the plaintiff husband against his wife in Hungary on the ground of her wilful desertion. Service was made by registered mail as ordered.

On May 31, 1961, the clerk of the Superior Court at Bridgeport, county of Fairfield, received a communication afterwards identified as from defendant living in Budapest, Hungary, protesting the jurisdiction of this court in the matter, denying her alleged desertion, and stating her intention to defend the action. No appearance having been filed thereafter, it was found by this court on September 29, 1961, that defendant had actual notice of the pendency of the action and that no further order of notice or appointment of attorney was required. The case was heard ex parte on its merits and evidence taken on three occasions beginning November 21, 1961, and ending December 15, 1961.

A threshold question is whether this court has jurisdiction of the matter for a divorce. The parties were married on September 2, 1950, at Budapest, in the country of Hungary. Two children were born to them there, where the children and defendant are still residing. In September or October, 1956, plaintiff became an active member of a revolutionary movement, the failure of which required him to go into hiding and ultimately to leave the country to avoid serious danger to, or loss of, his life or liberty. He entered the United States as a Hungarian refugee on January 1, 1957, and was paroled until February 16, 1959, when his entry for permanent residence was created in consequence of a law enacted by Congress on July 25, 1958. He has actually and continuously resided in the state of Connecticut for more than three years next before the date of the complaint with the intention, previously to and since the bringing of the action, to make this state his established and permanent place of abode. He has a pending application for citizenship in the United States.

Jurisdiction to grant a divorce is founded on domicil. If there is the necessary domicil and the

requirements of our statutes as to notice to a non-resident defendant are complied with, the court has jurisdiction to grant the divorce. *Cikora* v. *Cikora,* 133 Conn. 456, 462; *Foss* v. *Foss,* 105 Conn. 502, 505. The prerequisites having been satisfied, this court finds it has jurisdiction of the present action for a divorce.

The question remains whether there has been a wilful desertion for three years with total neglect of duty on the part of defendant. The plaintiff having been the one who actually left the family home, any desertion of the defendant wife would be constructive in character. See *Finn* v. *Finn,* 13 Conn. Sup. 169; *Muscatello* v. *Muscatello,* 14 Conn. Sup. 498; *Alden* v. *Alden,* 21 Conn. Sup. 301. "Desertion as a ground for a divorce may be actual or constructive. There is a constructive desertion, entitling the innocent party to a divorce for desertion, where an existing cohabitation is brought to an end by the misconduct of one of the spouses; whether a spouse's conduct constitutes constructive desertion warranting a divorce depends on the particular circumstances." 27A C.J.S. 107, § 36(3). Cf. *Finn* v. *Finn,* supra, 170. The misconduct need not be with the intent of forcing the other spouse from the home. "It is enough if such is the natural consequence of the acts." 17 Am. Jur., 327, § 108 & n.20.

In this state, our Supreme Court, while expressly refraining from passing upon either the allegations required to set up a constructive desertion or the sufficiency of such a theory as a ground of divorce, nevertheless had occasion to recognize certain essentials of the rule in *Lindquist* v. *Lindquist,* 137 Conn. 165, 169, viz.: "According to the rule as it has been stated in jurisdictions where it has been adopted, where a spouse intentionally brings the cohabitation to an end by misconduct which renders the continuance of marital relations so unbearable that the

other leaves the family home, the former is the deserter and the latter may obtain a divorce upon that ground. . . . Where the rule has been adopted, serious misconduct upon the part of the offending spouse is held essential to its application. In no event could misconduct of an offending husband be held to afford a basis for a decree on the ground of constructive desertion unless it was so improper as to defeat the essential purposes of the marriage relation or give the wife good reason to believe that cohabitation could no longer be continued with due regard to her health or safety or otherwise render continued cohabitation intolerable." Nevertheless, there is no question of the validity of the ground of constructive desertion where the facts of the same fit in with the definition of wilful desertion for three years with total neglect of duty found in the Connecticut cases in construing our statute.

Under § 46-13 of the General Statutes, a divorce may be granted on the ground of "wilful desertion for three years with total neglect of duty." "The desertion for three years which is a ground for divorce under [the statute] is 'the wilful absenting of one party to the marriage contract from the society of the other, coupled with the intention on the part of the absenting party to live apart, in spite of the wish of the other, and not to return to cohabitation.' . . . 'This definition involves the coexistence of the following conditions: (1) Cessation from cohabitation, (2) an intention on the part of the absenting party not to resume it, (3) the absence of the other party's consent, and (4) the absence of justification.'" *Lindquist* v. *Lindquist,* supra, 167. " 'The statutory offense of desertion . . . contains in it the intent to put an end to the marital condition, and the intent never to renew it.' . . . 'The offense of desertion consists in the cessation of cohabitation, coupled with a determination in the mind

of the offending person not to renew it. This intent is the decisive characteristic, and the question of intent is always a question of fact, but must be proved either by direct evidence or as the necessary and certain consequence of other facts clearly proved.' . . . The language of our statute, 'total neglect of duty,' contemplates a complete separation of the parties for the statutory period accompanied by a design on the part of the one who has left the common abode not to resume cohabitation. It imports a cessation of cohabitation, a refusal to live together, which involves an abnegation of all the duties and obligations resulting from the marriage contract." *McCurry* v. *McCurry*, 126 Conn. 175, 178.

The evidence amply establishes the first element —that there has been a cessation of cohabitation for the required statutory period. As to the wilful nature of the desertion without justification or excuse on the defendant's part, and the plaintiff's lack of consent to the separation, the evidence shows further facts as follows: A few hours before their marriage, plaintiff saw her book containing her name indicating her affiliation with the Communist party. When compelled to leave the country for his safety, he asked defendant to accompany or join him. At the time, she was in a hospital in relation to an abortion. Refusing to agree to follow him, she stated that if he went, he would be doing so alone and that she preferred to remain there. In the correspondence between them since his arrival in this country, she has persistently indicated her preference for her own way of life and her desire to remain in her own country. In view of the established form of political authority in effect in Hungary, the return of plaintiff there would likely be fraught with grievous risk to his safety, life and liberty. Since coming to the United States, plaintiff

has been employed diligently as a skilled worker, has been self-supporting and would be able to maintain a suitable home for his wife and family. Following defendant's intention to "give" the two children presently in Hungary to the state there, they have been placed with his parents, to whom plaintiff has sent money from time to time for their support. He has desired to have her and the family here with him. She refuses to join him.

"The husband may choose and fix the domicile of himself and his wife, if, in doing so, he acts reasonably, and when he properly exercises his right to select a new domicile, her unjustifiable failure or refusal to accompany or follow him to the new domicile constitutes desertion or abandonment of him by her which, if continued for the statutory period, is ground for a divorce against her." Note, 29 A.L.R.2d 474, 476. "As between husband and wife, the husband must provide a home for the family and has the right, acting reasonably, to choose the place where the family shall reside. It is in general the duty of the wife to submit to such determination. Her refusal, without good reason therefor, to accompany her husband to the home which he selects and provides will constitute a desertion by her. . . . [T]his right of the husband is not limited to the state or country in which the parties lived at the time of their marriage, and . . . he may exercise it reasonably and in a way which will change the country of his citizenship and allegiance if he desires. . . . The right which the husband exercises in the selection of the place of abode is not an entirely arbitrary power. He must exercise his right in a reasonable manner, with due regard for his wife's health, welfare, comfort and peace of mind." 17 Am. Jur. 337, § 121; 27A C.J.S. 104, § 36(2), n.6; note, 29 A.L.R.2d 474, 484; *Franklin* v. *Franklin,* 190 Mass. 349; *Ogden* v.

*Ogden,* 159 Fla. 604. A wife's domicil follows that of her husband in the absence of circumstances giving her a separate domicil. *Foss* v. *Foss,* 105 Conn. 502, 506; *DeRosa* v. *DeRosa,* 129 Conn. 409, 412.

A consideration of the facts established compels certain conclusions. The plaintiff has reasonably exercised his right to select and determine the new domicil of himself and family. The voluntary choice of defendant to remain in Hungary together with her breach of duty to join him here—tantamount to misconduct—under circumstances when he cannot join her there without good reason to apprehend serious danger to his life, liberty and safety, is the cause of the cessation of cohabitation without justification on her part. The prerequisite intent of an offending party not to renew cohabitation may be shown by direct evidence or as the necessary and certain consequence of other facts clearly proven. *Bennett* v. *Bennett,* 43 Conn. 313, 318; *McCurry* v. *McCurry,* supra, 179. A person is conclusively presumed to intend the natural and necessary consequences of his acts. *Allen* v. *Rundle,* 50 Conn. 9, 32. Implicit in the defendant's chosen conduct under the circumstances is an intent on her part not to resume cohabitation. There is no evidence indicating any impossibility of her joining him here from circumstances beyond her control, but any such condition would be immaterial in view of her voluntary disinclination to live here with him and her preference for another way of life. Under the circumstances, her unjustified refusal to live with him, involving a total abnegation of all the duties and obligations resulting from marriage and defeating the essential purposes of the marriage relation, constitutes her as the deserter. *Campbell* v. *Campbell,* 110 Conn. 277, 280. The court concludes that the constructive desertion of defendant is wilful desertion within the meaning of that term as used in the

divorce statute entitling plaintiff to a divorce as alleged and prayed for.

Judgment may enter finding actual notice to the defendant and decreeing a divorce to plaintiff on the ground of defendant's wilful desertion for three years with total neglect of duty.